**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MARSHALL SMITH, BRANDON HERMAN, CHAD PATTERSON, JEFFERY ROBERTS, MICHAEL WILL, SUSAN WINSTEAD, ROBERT BOHANNON, HOLLY BUCKINGHAM, RICHARD MORELLO, JR., ROBERT HARRIS, AMANDA LARISCY, CHARLES NEWMAN, and PAUL CHRISTIANSEN individually and on behalf of all similarly situated persons,<br><br>       Plaintiffs,<br><br>  v.<br><br>COMPLYRIGHT, INC., a Minnesota corporation,<br><br>       Defendant. | Civil Action No. 1:18-cv-4990<br><br>CLASS ACTION<br><br>Jury Trial Demanded<br><br>Hon. Edmond E. Chang |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

   A.  The Data Breach ...........................................................................................2

   B.  Procedural History .......................................................................................3

III.  SUMMARY OF THE SETTLEMENT ................................................................4

   A.  The Settlement Class ....................................................................................4

   B.  Settlement Benefits ......................................................................................4

      1.  Settlement Fund .................................................................................4

      2.  The Protection Plan, Cash, and Reimbursement Options.....................5

      3.  Security Measures .............................................................................6

      4.  The Costs of Notice and Settlement Administration ...........................7

      5.  Attorneys' Fees, Costs, and Expenses, and Representative
          Plaintiff Service Awards....................................................................7

IV.  ARGUMENT .......................................................................................................8

   A.  Preliminary Approval of the Settlement Is Appropriate...................................9

      1.  The Settlement Class Is Well Represented..........................................9

      2.  The Settlement Was Reached as a Result of Hard-Fought,
          Arm's Length Negotiations ............................................................. 10

      3.  The Settlement Benefits Are Excellent Taking into Consideration
          the Costs, Risks, and Delay of Trial and Potential Appeals...............11

      4.  The Proposed Method of Distributing Relief Supports
          Preliminary Approval of the Settlement............................................14

      5.  The Terms of the Proposed Award of Attorneys' Fees
          Supports Preliminary Approval of the Settlement..............................15

      6.  The Settling Parties' Agreements ....................................................16

i

7. The Settlement Treats Settlement Class Members Equally ...............................16

B. The Settlement Class Is Likely to Be Certified for Settlement Purposes ......................16

1. The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied ..................................17

a. The Settlement Class Is So Numerous that Joinder of Individual Members Is Impracticable ......................................................17

b. There Are Questions of Law and Fact Common to the Settlement Class ...................................................................17

c. Representative Plaintiffs' Claims Are Typical of the Claims of the Settlement Class ..........................................18

d. The Interests of Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel Are Aligned with the Interests of the Settlement Class ..................................................19

2. The Requirements of Rule 23(b)(3) Are Satisfied ..............................................19

a. Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions ..............................20

b. A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter ...........................................21

V. PROPOSED CO-LEAD SETTLEMENT CLASS COUNSEL ARE WELL QUALIFIED TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS ..................................................................22

VI. THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS.............23

A. Contents of the Notice Program ...................................................................24

1. Opting Out ...............................................................................................24

2. Objecting .................................................................................................25

B. Scope of Notice .........................................................................................26

VII. CONCLUSION .................................................................................... 28

# TABLE OF AUTHORITIES

Cases

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................20, 22

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ............................................................................8

*Butler v. Sears Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ..........................................................................20

*Carnegie v. Household Int'l Inc.*,
  376 F.3d 656 (7th Cir. 2004) ..........................................................................21

*Chi. Teachers Union v. Bd. of Educ. of Chi.*,
  No. 14-2843, 2015 WL 4667904 (7th Cir. Aug. 7, 2015) ..........................20

*Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................... 19

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,
  657 F.2d 890 (7th Cir. 1981) ..........................................................................19

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)..........................................................................................23

*Gasper v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996)........................................................................18

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014).........13

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)......................................................................11

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)..............................................................12

*In re Chinese–Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2012 WL 92498 (E.D. La. Jan. 10, 2012) ........................21

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195, 208 (5th Cir. 1981) ..................................................................19

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ..........................................................15

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ...................................................................21

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .....................................................................9

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  910 F. Supp. 2d 891 (E.D. La. 2012) ................................................20, 21

*In re Ready-Mixed Concrete Antitrust Litig.*,
  261 F.R.D. 154, 168 (S.D. Ind. 2009) ......................................................19

*In re Sunrise Sec. Litig.*,
  131 F.R.D. 450 (E.D. Pa. 1990) ...............................................................13

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996). ....................................................................8

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ....................................................................18

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338 (7th Cir. 1997) ....................................................................22

*Messner v. Northshore Univ. Healthsystem*,
  669 F.3d 802 (7th Cir. 2012) ....................................................................20

*Patrykus v. Gomilla*,
  121 F.R.D. 357 (N.D. Ill. 1988) ...............................................................17

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ................................................................23

*Phillips Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................22

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750, 756 (7th Cir. 2014) ............................................................17

*Swanson v. Am. Consumer Indus.*,
  415 F.2d 1326 (7th Cir. 1969) ..................................................................17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ..................................................................11

*Twigg v. Sears, Roebuck & Co.*,
  153 F.3d 1222 (11th Cir. 1998) ...............................................................23

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) ............................................................................17

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982).......................................................................13

<u>Federal Rules</u>

Fed. R. Civ. P. 23(a) ....................................................................17, 18, 19

Fed. R. Civ. P. 23(b)(3)...............................................................19, 20, 21

Fed. R. Civ. P. 23(e) .......................................................................*passim*

Fed. R. Civ. P. 23(g) ...............................................................................22

Fed. R. Civ. P. 23(h) ..........................................................................15, 16

<u>Miscellaneous Authority</u>

Manual for Complex Litigation (Fourth) § 11.423 (2004) ...........................10

Manual for Complex Litigation (Fourth) § 13.12 (2004) ...............................9

7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)................................20

## I.    INTRODUCTION

Plaintiffs Marshall Smith, Brandon Herman, Chad Patterson, Jeffery Roberts, Michael Will, Susan Winstead, Robert Bohannon, Holly Buckingham, Richard Morello, Jr., Robert Harris, Amanda Lariscy, Charles Newman, and Paul Christiansen ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined in the Settlement and stated below)[1], by and through counsel, respectfully submit this motion for preliminary approval of class action settlement agreement and incorporated memorandum of law.

After hard-fought litigation and over four months of negotiations, the Settling Parties reached the Settlement Agreement (the "Settlement") attached hereto as Exhibit A. The Settlement provides that defendant ComplyRight, Inc. ("ComplyRight") shall pay $3,025,000 into a Settlement Fund, and Settlement Class Members are eligible to claim a free 2-year subscription to the identity theft protection product MyIDCare, a one-time cash payment of approximately $50, or reimbursement of up to $200 for documented lost time or certain expenses incurred as a result of the Data Breach. The Settlement also requires that ComplyRight undertake commitments to data security and training going forward, including regularly conducting inspections of the security of its systems and encrypting Social Security numbers residing in storage. As detailed herein, the Settlement readily satisfies the applicable preliminary approval standard of likely to be approved as fair, reasonable, and adequate.

Representative Plaintiffs respectfully move this Honorable Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program, as set forth in the Declaration of Carla A. Peak attached as Exhibit A to the Settlement, and the commencement of notice to the Settlement Class as set forth in the Settlement and the Notice Program; (3)

---

[1] The definitions in the Settlement are incorporated herein by reference.

appointing Kurtzman Carson Consultants LLC ("KCC") as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Marshall Smith, Brandon Herman Chad Patterson, Jeffery Roberts, Michael Will, Susan Winstead, Robert Bohannon, Holly Buckingham, Richard Morello, Jr., Robert Harris, Amanda Lariscy, Charles Newman, and Paul Christiansen as Representative Plaintiffs; (6) appointing as Co-Lead Settlement Class Counsel Ben Barnow and Erich P. Schork, Barnow and Associates, P.C., and Laurence D. King and Matthew B. George, Kaplan Fox & Kilsheimer LLP ("Proposed Co-Lead Settlement Class Counsel"); (7) approving the form and content of the Email Notice, Postcard Notice, Detailed Notice, and Claim Form attached as Exhibits C–F of the Settlement, respectively; and (8) scheduling a Final Fairness hearing to consider entry of a final order approving the Settlement, final certification of the Settlement Class for settlement purposes only, and the request for attorneys' fees, costs, and expenses, and Representative Plaintiff service awards.

## II.     FACTUAL BACKGROUND

### A.     The Data Breach

On July 13, 2018, ComplyRight sent letters to Plaintiffs and approximately 662,465 others informing them that from at least April 20, 2018 to May 22, 2018, an unauthorized person or persons illegally intruded into its website and accessed or viewed their name, address, telephone number, email address, and Social Security number (the "Data Breach"). Settlement Class members' personal information had been entered into ComplyRight's website by, or on behalf of, employers or payers to prepare tax-related forms, for example, forms 1099 and W-2. ComplyRight's letters offered Settlement Class Members a free one-year subscription to a TransUnion credit monitoring and identity theft protection product.

**B.      Procedural History**

After ComplyRight sent its letters announcing the Data Breach, five class action complaints were filed in federal district courts in Illinois, Florida, Nevada, and Wisconsin asserting claims against ComplyRight.[2] Proposed Co-Lead Settlement Class Counsel reached out to plaintiff's counsel in each case and, after several discussions, was able to secure an agreement to informally consolidate all actions before this Court.

On September 10, 2018, Representative Plaintiffs filed the Consolidated Amended Class Action Complaint ("CAC") against ComplyRight. ECF No. 27. On October 24, 2018, ComplyRight moved to dismiss the CAC, moved to strike Representative Plaintiffs' class allegations, and filed its Answer and Affirmative Defenses. ECF Nos. 38, 41, 43. On November 14, 2018, Representative Plaintiffs moved to strike certain of ComplyRight's affirmative defenses and, on November 26, 2018, filed their oppositions to ComplyRight's motion to dismiss the CAC and to strike their class allegations. ECF Nos. 59, 60. After discussions between Settling Parties' counsel, ComplyRight filed an Amended Answer and Affirmative Defenses on December 10, 2018, reducing the number of affirmative defenses asserted from forty-one (41) to ten (10). ECF No. 65. Pursuant to the Northern District of Illinois' Mandatory Initial Discovery Pilot Program, the Settling Parties exchanged disclosures, written discovery, and documents in accordance with the rules and deadlines set by the Court.

The Settling Parties engaged in several rounds of settlement negotiations prior to reaching the Settlement. The Settling Parties participated in mediation before the Honorable Wayne R.

---

[2]  *See Winstead v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.); *Bohannon v. ComplyRight, Inc.*, Case No. 0:18-cv-61730-BB (S.D. Fla.); *Roberts v. ComplyRight, Inc.*, Case No. 0:18-cv-61836-CMA (S.D. Fla.); *Morello v. ComplyRight, Inc.*, Case No. 2:18-cv-01480-RFB-GWF (D. Nev.); and *Newman v. ComplyRight, Inc.*, Case No. 2:18-cv-01258-NJ (E.D. Wis.).

Andersen (Ret.) of JAMS on December 11, 2018, and again on January 31, 2019. In the months following the second mediation, the Settling Parties continued to negotiate with the assistance of Judge Andersen (Ret.). After over four months of negotiations, the Settling Parties executed a Memorandum of Understanding on April 15, 2019. The Settlement Agreement was executed on May 22, 2019.

## III.    SUMMARY OF THE SETTLEMENT

### A.    The Settlement Class

Under the terms of the Settlement, the Settling Parties agreed to certification of the following Settlement Class for settlement purposes only:

> All persons whose Personal Information was maintained on ComplyRight's website during the Data Breach that occurred from at least April 20, 2018 through May 22, 2018, including all persons who were sent the July 13, 2018 letter informing them of the Data Breach.

SA ¶¶ 1.11, 2.14.[3] The following Persons are specifically excluded from the Settlement Class: (a) individuals who are or were during the Data Breach officers or directors of ComplyRight; (b) any person found to be criminally involved in the Data Breach; and (c) any judge presiding over this matter. SA ¶ 1.11.

### B.    Settlement Benefits

In summary, the Settlement provides the following benefits:

#### 1.    Settlement Fund

The Settlement provides that ComplyRight shall pay $3,025,000 into the Escrow Account (the "Settlement Fund"). The Settlement Fund shall be used to pay valid claims submitted by Settlement Class Members selecting the Cash Option or the Reimbursement Option, the costs of

---

[3] References to particular paragraphs of the Settlement are prefixed by "SA ¶."

notice and claims administration (not to exceed $300,000), and Court-approved attorneys' fees, costs, and expenses, and Representative Plaintiff service awards. ComplyRight is also responsible for paying the costs of the Protection Plan Option separate and apart from the Settlement Fund. SA ¶¶ 2.1, 2.8. No portion of the Settlement Fund shall revert back to ComplyRight. SA ¶ 2.13.

### 2. The Protection Plan, Cash, and Reimbursement Options

Settlement Class members shall be entitled to claim and receive, at their selection, one and only one of the following benefits: (a) Protection Plan Option, (b) Cash Option, or (c) Reimbursement Option. SA ¶ 2.3.

*Protection Plan Option*. ComplyRight shall make available free-of-charge to claiming Settlement Class Members a two-year subscription to MyIDCare® to be provided by ID Experts Corp. to include (i) credit monitoring by Experian (or such other qualified company approved by Proposed Co-Lead Settlement Class Counsel; (ii) dark web monitoring; (iii) Fully Managed Recovery (full services); (iv) $1,000,000 insurance coverage for reimbursement of losses attributable to the Data Breach, which shall commence upon enrollment; (v) Member Advisory Services; (vi) Lost Wallet Assistance; and (vii) 24-Hour Customer Service for each of the above, as applicable. SA ¶ 2.4(a). Prior to activation, a Settlement Class member may transfer the Protection Plan to their spouse, significant other with whom they cohabitate, or child age twenty-five (25) or younger. SA ¶¶ 1.4, 2.4(b).

*Cash Option*. Settlement Class members claiming the Cash Option shall be entitled to an estimated $50 cash payment. The amount of the payments made under the Cash Option is be dependent on the value of valid claims submitted under the Cash Option and Reimbursement Option. After payment of the costs of Notice and Settlement Administration (not to exceed $300,000), and Court-awarded attorneys' fees, costs, expenses, and Representative Plaintiff

Service Awards ("Administrative Expenses"), in the event that the total amount remaining in the Settlement Fund exceeds the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the Cash Option and Reimbursement Option shall be increased pro rata to exhaust the Fund. SA ¶ 2.10. In the event the total amount in the Settlement Fund after payment of Administrative Expenses is less than the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the cash option and reimbursement option shall be decreased pro rata to exhaust the fund. SA ¶ 2.11.

*Reimbursement Option*. Settlement Class Members providing the requisite documentation shall be entitled to receive up to $200 as reimbursement of the following categories of expenses incurred as a result of the Data Breach and not reimbursed by insurance or another third party: (1) documented time spent as a result of the Data Breach of up to 3 hours at $15/hour; (2) money spent purchasing police reports because of the Data Breach; (3) late charges or other fees paid because of the Data Breach, including overdraft fees; and (4) other similar expenses directly related to the Data Breach and expended in good faith, at the Settlement Administrator's discretion. SA ¶ 2.6(b). As set forth above, the value of payments made under the Reimbursement Option is dependent on the aggregate value of valid claims submitted under the Cash Option and Reimbursement Option, and may be increased or decreased pro rata in the same manner as the Cash Option described above. SA ¶¶ 2.10, 2.11.

### 3. Security Measures

The Settlement provides that ComplyRight shall implement and maintain the following data security practices for a period of three (3) years following the Effective Date of the Settlement:

- An information security program containing policies, procedures, and technical controls;

- Controls regarding authentication of users who access ComplyRight's website and controls designed to prevent access by users in locations where illegitimate use of the ComplyRight website could originate;

- ComplyRight shall encrypt all Social Security numbers stored electronically;

- Regular and periodic training and education regarding the storage, handling, and destruction of personally identifiable information and nonpublic personal information for employees that handle those types of information; and

- Annual simulated penetration testing and procedures designed to monitor and address vulnerabilities to ComplyRight's information systems.

SA ¶ 2.15.

### 4.     The Costs of Notice and Settlement Administration

The costs of providing Notice of the Settlement to the Settlement Class and the costs of Settlement Administration (not to exceed $300,000) shall be paid from the Settlement Fund.

### 5.     Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Service Awards

All awards of attorneys' fees, costs, and expenses, and Representative Plaintiff service awards shall be paid from the Settlement Fund. Aside from the fact that the Settlement would include a common fund, Settling Parties did not discuss attorneys' fees, costs, and expenses or Representative Plaintiff service awards until after all substantive elements of the Settlement were agreed upon. SA ¶ 7.1. Additionally, the amounts of any award of attorneys' fees, costs, and expenses and Representative Plaintiff service awards are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6.

Proposed Co-Lead Settlement Class Counsel intend to seek Court-approval for payment, which is to be made within 14 days after the Effective Date of the Settlement from the Settlement Fund, of: (1) $908,333 for attorneys' fees; (2) reimbursement of reasonable out-of-pocket costs and expenses; and (3) service awards for each Representative Plaintiff in the amount of $2,500.

## III.   ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (internal quotations omitted). Evaluations of fairness, reasonableness, and adequacy require that the facts be viewed in a light most favorable to the settlement. *Isby*, 75 F.3d at 1199.

At the preliminary approval stage, the Court must ascertain whether the proposed settlement is likely to be approved as fair, reasonable, and adequate, and whether the Settlement Class is likely to be certified for settlement purposes at the final approval stage. Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), as recently amended, provides that in determining whether a settlement is fair, reasonable, and adequate at the final approval stage, a Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As consideration of these factors demonstrates, the Settlement is likely to be approved as fair, reasonable, and adequate. The Settlement Class is also likely to be certified for settlement purposes only at the Final Fairness Hearing.

## A. Preliminary Approval of the Settlement Is Appropriate

### 1. The Settlement Class Is Well Represented

Proposed Co-Lead Settlement Class Counsel have significant experience in data breach consumer class actions such as this and are well-informed of the legal claims at issue and the risks of this case. A copy of Proposed Co-Lead Settlement Class Counsels' resumes is attached hereto as Group Exhibit B. Since the inception of this litigation, they have worked diligently to advance Representative Plaintiffs' and other Settlement Class members' interests. After learning of the five cases filed against ComplyRight in multiple jurisdictions across the country, they reached out to plaintiff's counsel from each case and were able to secure agreement to informally consolidated the cases before the Court without judicial intervention. They also drafted the Consolidated Class Action Complaint and the Amended Consolidated Class Action Complaint, opposed ComplyRight's motions to dismiss and to strike class allegations, and served and responded to discovery.

Prior to reaching the Settlement, Proposed Co-Lead Settlement Class Counsel and counsel for ComplyRight engaged in several rounds of settlement negotiations over the course of four months, including two in-person mediation sessions with Judge Andersen (Ret.). Throughout those negotiations, Proposed Co-Lead Settlement Class counsel pursued informal discovery from ComplyRight that was appropriately targeted at information relevant to the Settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citations and quotations omitted); *see also* Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and

approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation (Fourth) § 11.423 (2004). Indeed, to further such ends, courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery." *Id.*

The Settlement includes a confirmatory discovery provision to confirm the information provided to Proposed Co-Lead Settlement Class Counsel through the course of settlement negotiations. The confirmatory discovery will be conducted by Proposed Co-Lead Settlement Class Counsel, namely, reasonable requests for relevant documents and interviews of up to two (at the discretion of Proposed Co-Lead Settlement Class Counsel) knowledgeable employees identified by ComplyRight. SA ¶ 10.4. Once the confirmatory discovery is completed, Proposed Co-Lead Settlement Class Counsel shall determine, based on said discovery, whether in their opinion the Settlement is, as they currently believe, fair, reasonable, and adequate. *Id.* If Proposed Co-Lead Settlement Class Counsel are not satisfied that this standard has been met, they have the power and right to terminate the settlement. *Id.*

Representative Plaintiffs have likewise worked diligently on behalf of the Settlement Class. They stepped forward to prosecute this action on behalf of all Settlement Class Members, were involved in the drafting of the complaint and responding to discovery, and reviewed and approved the Settlement.

This factor favors preliminary approval.

### 2. The Settlement Was Reached as a Result of Hard-Fought, Arm's Length Negotiations

The Settlement is the product of over four months of extensive, hard-fought, arm's length negotiations conducted by experienced counsel. On December 11, 2018, the Settling Parties

participated in mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS. After a full day of negotiations, the Settling Parties left that mediation without a deal. In the weeks that followed, Proposed Co-Lead Settlement Class Counsel and counsel for ComplyRight remained in contact. A second mediation before Judge Andersen (Ret.) took place on January 31, 2019. Similar to the first mediation, those negotiations concluded without an agreement between Settling Parties. In the months that followed, the Settling Parties continued to negotiate with the assistance of Judge Andersen (Ret.). That process involved several calls and emails and the exchange of proposals and counter-proposals. After over four months of negotiations, the Settling Parties finally executed a Memorandum of Understanding on April 15, 2019. The Settlement Agreement was then executed on May 20, 2019.

Throughout the negotiations, Proposed Co-Lead Settlement Class Counsel and counsel for ComplyRight fought hard for the interests of their respective clients. In Proposed Co-Lead Settlement Class Counsels' informed opinions, the Settlement includes significant and valuable recovery for the Settlement Class. This factor favors preliminary approval.

### 3. The Settlement Benefits Are Excellent, Taking Consideration the Costs, Risks, and Delay of Trial and Potential Appeals

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced with the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citation omitted).

Balancing the risks of continued litigation, the benefits of the Settlement, and the immediacy and certainty of the significant recovery provided for by the Settlement, supports that the Settlement should be preliminarily approved.

Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But they also recognize the substantial risks involved in continuing this litigation. ComplyRight has aggressively maintained its positions that Representative Plaintiffs cannot state a claim for relief, that a class could not be certified, that it would not be found liable at trial, and that Representative Plaintiffs would not be able to prove damages resulting from the Data Breach. While they disagree with ComplyRight's views, Proposed Co-Lead Settlement Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here.

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, further dispositive motions and, of course, a trial and appeal. Given the complex nature of the security breach at issue, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include substantial expert discovery and significant motion practice

12

related to such. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay.

The Settlement, in contrast, provides certainty of recovery through the creation of a $3,025,000 Settlement Fund. All Settlement Class members are eligible to submit claims under the Settlement to receive the Protection Plan, an estimated $50 cash payment, or up to $200 for reimbursement of documented time spent (up to 3 hours at $15/hour) and certain documented out-of-pocket expenses related to the Data Breach. To receive the benefits of the Settlement, Settlement Class members need only log on to the settlement website and complete the Claim Form attached as Exhibit F to the Settlement. After Administrative Expenses are paid from the Settlement Fund, all amounts remaining in the Escrow Account will be paid to Settlement Class Members submitting valid Claim Forms for the Cash and Reimbursement Options. The Settlement also requires ComplyRight to implement and maintain specific security measures.

Thus, this factor favors approval of the settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted); *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.,* 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate . . . the extraordinary complexity, expense and likely duration of this litigation").

### 4. The Proposed Method of Distributing Relief Supports Preliminary Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." The advisory committee's notes to this recently enacted provision instruct: "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

The Settlement and Claim Form are designed to facilitate the filing of valid claims by Settlement Class Members. To claim the Protection Plan or Cash Option, Settlement Class Members need only select their desired option, provide their contact information, and submit a Claim Form (online or through mailing). Additionally, to claim relief under the Reimbursement Option, Settlement Class Members need only select that form of relief, provide their contact information, submit documentation supporting the claimed unreimbursed time or expenses, and submit their Claim Form (online or through mailing). All claims will be processed by KCC, an experienced and nationally recognized class action administration firm. To facilitate timely and efficient payment to those Settlement Class members selecting the Cash or Reimbursement Options, Settlement Class Members are also given the option to receive payment electronically (via PayPal or Zelle) or have a check mailed to them.

The methods of distributing relief to Settlement Class Members further support preliminary approval of the Settlement is appropriate.

**5. The Terms of the Proposed Award of Attorneys' Fees Supports Preliminary Approval of the Settlement**

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." The advisory committee's notes instruct: "Examination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement. Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

The terms of the proposed attorney's fee award are consistent with class action best practices. The Settling Parties did not discuss attorneys' fees until after all substantive elements of the Settlement were agreed upon. SA ¶ 7.1. The amount of any attorney's fee award is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6. Additionally, the attorneys' fees award shall be paid from the Settlement Fund within fourteen (14) days of the Effective Date of the Settlement—there is no quick-pay provision in the Settlement. SA ¶ 7.5.

Representative Plaintiffs intend to seek an attorney's fee award of $908,333. Not taking into account the value of the Protection Plan or injunctive relief provided for by the Settlement, the requested fee award equates to approximately 33.3 percent of the recovery achieved.[4] The requested fee award is reasonable under the percentage-of-recovery method, which is the favored method for calculating attorneys' fees in common fund cases, such as this matter. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (noting that

---

[4] ($3,025,000 - $300,000 (notice and settlement administration costs))/3=$908,333.

several courts in this circuit have awarded "fees at or about the 33.3%-of-fund level"). In compliance with Rule 23(h), Representative Plaintiffs' Motion for Award of Attorneys' Fees, Costs, and Expenses, and Representative Service Awards will be filed with the Court and uploaded to the Settlement website 21 days prior to the deadline for Settlement Class members to file objections to the Settlement.

The terms of the proposed attorney's fee award support preliminary approval of the Settlement.

### 6. The Settling Parties' Agreements

Rule 23(e)(3) provides that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." After over four months of negotiations, the Settling Parties executed a Memorandum of Understanding on April 15, 2019. The substantive terms of the Memorandum of Understanding are reflected in the Settlement, which was executed by the Settling Parties on May 20, 2019.

### 7. The Settlement Treats Settlement Class Members Equally

The Settlement provides all Settlement Class Members with the option of claiming the Protection Plan, Cash Option, or Reimbursement Option. As the foregoing analysis demonstrates, the Settlement is likely to be approved as fair, reasonable, and adequate, and should be preliminarily approved.

### B. The Settlement Class Is Likely to Be Certified for Settlement Purposes

At the preliminary approval stage, the Court must address whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). "The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 advisory committee notes

to 2018 amendments. Because the requirements of Rule 23(a) and 23(b)(3) are satisfied, the Settlement Class is likely to be certified for settlement purposes.

### 1. The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are satisfied here.

### a. The Settlement Class Is So Numerous that Joinder of Individual Members Is Impracticable

Fed. R. Civ. P. 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No "magic number" is necessary. *See Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Courts in this circuit have certified classes with less than 50 members. *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988). Here, the Settlement Class includes approximately 662,477 individuals. Numerosity is satisfied.

### b. There Are Questions of Law and Fact Common to the Settlement Class

Rule 23(a)(2) requires the existence of a question of law or fact that is common to all Settlement Class Members and capable of class-wide resolution, the determination of which is central to the validity of all class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting authorities).

Several questions of law and fact common to all Settlement Class Members exist, including: (i) whether ComplyRight violated common law duties, prohibitions on unfair and deceptive trade practices, other legal obligations, and industry standard practices in causing the Data Breach; (ii) whether ComplyRight failed to properly secure and protect Settlement Class Members' Personal Information, and (iii) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. These legal and factual questions are common to each member of the Settlement Class. The commonality requirement is satisfied.

### c. Representative Plaintiffs' Claims Are Typical of the Claims of the Settlement Class

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Whether a plaintiff's claims are typical of those of the other class members is closely related to the commonality inquiry. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Representative Plaintiffs and all other Settlement Class Members' claims arise from ComplyRight's alleged failure to implement and maintain reasonable security measures and the resulting Data Breach, and their claims are based on the same legal theories. As a result, Rule 23(a)(3)'s typicality requirement is satisfied.

    **d.** **The Interests of Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel Are Aligned with the Interests of the Settlement Class**

Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires that class representatives retain adequate counsel and have no conflicting interests with other class members. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009); *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (requiring "competent and experienced counsel able to conduct the litigation"). When class representatives and members seek the common goal of the largest possible recovery for the class, their interests do not conflict. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981); *see also Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery.").

Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class. They each came forward prior to the filing of the initial complaints and have been involved in this matter since that time, including participating in the Mandatory Initial Discovery Pilot Program and responding to discovery obligations. Their interests are aligned with those of the other Settlement Class Members. Additionally, Proposed Co-Lead Settlement Class Counsel are well-qualified to represent the Settlement Class, as they each possess significant experience leading the prosecution of complex class action matters. *See* Group Exhibit B (resumes of Proposed Co-Lead Settlement Class Counsel). The adequacy requirement is satisfied.

    **2.** **The Requirements of Rule 23(b)(3) Are Satisfied**

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee notes to 1966 Amendment).

Both of these requirements are satisfied here.

### a. Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions

Rule 23(b)(3)'s predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirement "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner v. Northshore University Healthsystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). Common questions predominate when adjudicating questions of liability common to the class will achieve economies of time and expense. *Chi. Teachers Union v. Bd. of Educ. of Chi.*, No. 14-2843, 2015 WL 4667904, at *14 (7th Cir. Aug. 7, 2015). Predominance is not determined by "counting noses"—determining whether more common issues or individual issues exist regardless of importance. *Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013). "An issue 'central to the validity to each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (quoting *Dukes*, 131 S. Ct. at 2551). "Where 'defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will insure that funds are available' to compensate plaintiffs, predominance is satisfied." *In re Oil Spill by Oil Rig*

*Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (quoting *In re Chinese–Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2012 WL 92498, at *11 (E.D. La. Jan. 10, 2012)).

Representative Plaintiffs assert claims for negligence, negligence per se, negligent misrepresentation, and violations of state statutes prohibiting unfair and deceptive trade practices, regulating the use of Social Security numbers, and requiring reasonable procedures to safeguard sensitive personal information stored electronically and timely notification of data breaches to affected residents. The key questions in this litigation are whether Defendants failed to take reasonable and adequate measures to prevent the Data Breach, detect the Data Breach once initiated, remedy and mitigate the effects of the Data Breach, and to timely notify affected persons of the Data Breach in its aftermath. The predominance requirement is satisfied.

### b. A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all. *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Where, as here, a court is deciding the certification question in

the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *See Amchem*, 521 U.S. at 619.

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against ComplyRight. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims on their own against ComplyRight given the comparatively small size of each individual Settlement Class Member's claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating that the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action"). The superiority requirement is satisfied.

## IV. PROPOSED CO-LEAD SETTLEMENT CLASS COUNSEL ARE WELL QUALIFIED TO REPRESENT THE INTERESTS OF THE SETTLEMENT CLASS

Rule 23(g) provides that in appointing class counsel, the Court should consider counsel's work in identifying or investigating claims; counsel's experience in handling the types of claims asserted, counsel's knowledge of the applicable law; and the resources counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The work of Ben Barnow and Erich P. Schork, Barnow and Associates, P.C., and Laurence D. King and Matthew B. George, Kaplan Fox & Kilsheimer LLP, in this litigation and their experience prosecuting complex class action matters, including data breach cases, demonstrates they are well-qualified to represent the Settlement Class and possess the necessary resources to do so. *See* Group Exhibit B (resumes).

## VI.  THE NOTICE PROGRAM SATISFIES ALL APPLICABLE REQUIREMENTS

Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). The Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). And, notice must fairly describe the litigation and the proposed settlement and its legal significance. *See*, *e.g.*, *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998)) ("[The notice] must also contain an adequate description of the proceedings written in objective, neutral terms, that, insofar as possible, may be understood by the average absentee class member[.]").

The Settling Parties agreed upon KCC as the Settlement Administrator to provide notice and settlement administration service and request the Court's approval and appointment of KCC as the Settlement Administrator. KCC has significant experience as a class action notice provider and settlement administrator. *See* SA Exhibit A: Peak Decl. ¶¶ 4–8.

The Notice Program includes: (1) direct Email Notice to every Settlement Class Member ComplyRight has an email address for; (2) direct Postcard Notice to every Settlement Class Member ComplyRight is unable to provide an email address for; (3) a settlement website established to allow Settlement Class members to obtain information regarding the Settlement, access important documents regarding the Settlement, and file claims online; and (4) a toll-free number to provide Settlement Class members with information regarding the Settlement. Peak Decl. ¶¶ 13–20. The direct notice aspect of the Notice Program is expected to reach approximately

90% or more of likely Settlement Class Members. The notice plan readily satisfies the "best practicable" standard. Peak Decl. ¶¶ 9–10, 25.

### A. Contents of the Notice Program

The Notice documents were designed to provide information about the Settlement, along with clear, concise, easily understood information about Settlement Class Members' legal rights. Peak Decl. ¶¶ 22–24. The Notice documents include Email Notice, Postcard Notice, and a Detailed Notice available on the Settlement website (the Detailed Notice and Claim Form will also be provided by the Claims Administrator to claimants who request them). Peak Decl. ¶¶ 19–20 and SA Exhibits C–E. The Notice documents collectively include a fair summary of the Settling Parties' respective litigation positions; the general terms of the Settlement; instructions for how to opt-out of or object to the Settlement; the Settlement website address; the process and instructions for making a claim; and, as to be set by the Court, the date, time, and place of the Final Fairness Hearing. Peak Decl. ¶ 22 and SA Exhibits C–E.

The Notice documents contain information that a reasonable person would consider material in making an informed, intelligent decision of whether to opt out or remain a member of the Settlement Class and be bound by a final judgment, and they direct individuals to a convenient location to obtain more detailed information. Peak Decl. ¶¶ 22–24 and SA Exhibits C–E. Altogether, the Notice documents fairly apprise the Settlement Class Members of the terms of the Settlement and the options that are open to them in connection with this litigation. Peak Decl. ¶¶ 22–25.

### 1. Opting Out

Any member of the Settlement Class wishing to opt out of the Settlement Class must sign (individually, or, if the Person opting out is less than 18 years of age, though the signature of a

parent, legal guardian, or other legal representative) and timely submit to the designated Post Office Box established by the Settlement Administrator written notice clearly manifesting their intent to be excluded from the Settlement Class. SA ¶ 4.1. To be effective, the written notice must be postmarked no later than twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing. SA ¶¶ 1.10, 4.1.

## 2. Objecting

Settlement Class Member desiring to object to the Settlement will be required to submit a timely written notice of his or her objection.[5] To be timely, written notice of an objection in appropriate form must be filed with the Clerk of the United States District Court for the Northern District of Illinois, at the address where filings are accepted by the Clerk, twenty-one (21) days prior to the date set in the Notice for the Final Fairness Hearing, and served concurrently therewith upon (a) Co-Lead Settlement Class Counsel Ben Barnow and Erich P. Schork, Barnow and Associates, P.C., One North LaSalle Street, Suite 4600, Chicago, IL 60602, and Co-Lead Settlement Class Counsel Laurence D. King and Matthew B. George, Kaplan Fox & Kilsheimer

---

[5] The notice of objection must state: (i) the objector's full name, address, telephone number, and email address; (ii) information identifying the objector as a Settlement Class Member, including proof that they are a member of the Settlement Class, (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection; (iv) the identity of all counsel representing the objector; (v) the identity of all counsel representing the objector who may appear at the Final Fairness Hearing; (vi) all other cases in which the objector (directly or through counsel) or the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement, has been a named plaintiff in any class action, or has served as lead plaintiff class counsel, including the case name, court, and docket number for each; (vii) a certificate of good standing from the highest court of the state in which objector's counsel is admitted to practice law; (viii) documents sufficient to show the results of any sanctions, investigations, or disciplinary proceedings against objector's counsel (ix) a list of all persons who will be called to testify at the Final Fairness Hearing in support of the objection; (x) a statement confirming whether the objector intends to personally appear or testify at the Final Fairness Hearing; and (xi) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation). SA ¶ 5.1

LLP, 350 Sansome Street, Suite 400, San Francisco, CA 94104; and also on (b) Hsiao C. (Mark) Mao, Troutman Sanders LLP, 580 California Street, Suite 1100, San Francisco, CA 94104, counsel for ComplyRight. SA ¶ 5.1.

### B. Scope of Notice

Notice of the Settlement will be effectuated as prescribed by the Settlement Administrator. KCC will establish and maintain a case specific website to allow Settlement Class Members the ability to obtain additional information and documents about the Settlement, as well as file a Claim online. Peak Decl. ¶ 19. The case website will allow users to read, download, and print the Detailed Notice, Settlement Agreement, Preliminary Approval Order, Claim Form, Motion for Award of Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Service Awards, and Motion for Final Approval of Class Action Settlement Agreement. Peak Decl. ¶ 19. Settlement Class Members will also be able to review a list of Frequently Asked Questions and Answers, important dates and deadlines, as well as obtain contact information for the Settlement Administrator. Peak Decl. ¶ 19. The website address will be displayed and accessible through a hyperlink embedded in the Email Notices, as well as prominently displayed in the Postcard Notices. Peak Decl. ¶ 19.

KCC will establish and host a case specific toll-free number allowing Settlement Class Members to learn more about the settlement in the form of Frequently Asked Questions and Answers. Peak Decl. ¶ 20. It will also allow Settlement Class Members to request to have a Detailed Notice and Claim Form mailed directly to them. Peak Decl. ¶ 20. The toll-free number will be displayed in the Email Notice, Postcard Notice, Detailed Notice, and on the case website. Peak Decl. ¶ 20.

The Settlement provides for Email Notice or Postcard Notice to be sent directly to Settlement Class Members. Peak Decl. ¶ 13–18. Pursuant to the Settlement, ComplyRight will

provide KCC with a comprehensive list of Settlement Class Member names, email addresses (to the extent available), and postal addresses (the "Class List"). Peak Decl. ¶ 13. KCC will send Email Notice to every Settlement Class Member for whom an email address exists on the Notice List. Peak Decl. ¶ 14. The Email Notice content will be included in the body of the email, rather than as an attachment, to avoid spam filters and improve deliverability. Peak Decl. ¶ 14. The email will also contain a link to the case website. Peak Decl. ¶ 14.

Delivery of Email Notice will be attempted up to three times. Peak Decl. ¶ 15. Upon the third email bounceback for an individual Settlement Class Member, KCC will send a Postcard Notice via United States Postal Service (USPS), provided a physical address has been successfully identified. Peak Decl. ¶ 15.

KCC will send a Postcard Notice via USPS to all Settlement Class Members for whom an email address has not been provided, so long as a physical address has been successfully identified. Peak Decl. ¶ 16. Prior to mailing, the postal addresses will be checked against the National Change of Address (NCOA)[6] database maintained by USPS; certified via the Coding Accuracy Support System (CASS);[7] and verified through Delivery Point Validation (DPV).[8] Peak Decl. ¶ 17. Notices returned by USPS as undeliverable will be re-mailed to any address available through postal service forwarding order information. Peak Decl. ¶ 18. For notices returned by USPS as undeliverable without a forwarding address, address searches using credit bureau information will

---

[6] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and last known address.

[7] Coding Accurate Support System is a certification system used by the USPS to ensure the quality of ZIP+4 coding systems.

[8] Records that are ZIP+4 coded are then sent through Delivery Point Validation to verify the address and identify Commercial Mail Receiving Agencies. DPV verifies the accuracy of addresses and reports exactly what is wrong with incorrect addresses.

be conducted and the notices will be re-mailed to those Settlement Class Members for whom updated address information is located. Peak Decl. ¶ 18. KCC estimates the direct Email Notice and Postcard Notice will reach approximately 90% or more of Settlement Class Members. Peak Decl. ¶ 9

The Notice documents and the Notice Program are the best notice practicable under the circumstances, constitute due and sufficient notice to the Settlement Class, and comply with Fed. R. Civ. P. 23 and due process requirements. *See* Peak Decl. ¶ 25. Therefore, the Notice documents and Notice Program should be approved.

## VII. CONCLUSION

The Settlement readily meets the standard for preliminary approval. Representative Plaintiffs respectfully request hat this Honorable Court enter an Order:

(1)     Preliminarily approving the Settlement;

(2)     Directing that notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

(3)     Approving the form and content of the Email Notice, Postcard Notice, Detailed Notice, and Claim Form attached as Exhibits C, D, E, and F to the Settlement Agreement;

(4)     Appointing plaintiffs Marshall Smith, Brandon Herman, Chad Patterson, Jeffery Roberts, Michael Will, Susan Winstead, Robert Bohannon, Holly Buckingham, Richard Morello, Jr., Robert Harris, Amanda Lariscy, Charles Newman, and Paul Christiansen as Representative Plaintiffs;

(5)     Appointing Ben Barnow and Erich P. Schork, Barnow and Associates, P.C., and Laurence D. King and Matthew B. George, Kaplan Fox & Kilsheimer LLP, as Co-Lead Settlement Class Counsel; and

(6)     Scheduling a Final Fairness hearing to consider the entry of final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Representative Plaintiffs' service awards; and

(7)     Such other relief as the Court deems just and appropriate.

Dated:  May 22, 2019

Respectfully submitted,

/s/ Ben Barnow

Ben Barnow
Erich P. Schork
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, IL 60602
Tel: (312) 621-2000
Fax: (312)-641-5504
b.barnow@barnowlaw.com
e.schork@barnowlaw.com

Laurence D. King
Matthew B. George
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com

*Proposed Co-Lead Settlement Class Counsel*

Shpetim Ademi
ADEMI & O'REILLY, LLP
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com

Jeremiah Frei-Pearson
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com

Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
bfj@chimicles.com
mbd@chimicles.com

Aron D. Robinson
LAW OFFICES OF ARON D. ROBINSON
180 W. Washington, Suite 700
Chicago, IL 60602
Tel: (312) 857-9050
Fax: (312) 857-9054
adroblaw@aol.com

*Proposed Plaintiffs' Executive Committee*

Matt Harman
HARMAN LAW FIRM
3414 Peachtree Road NE Suite 1250
Atlanta, GA 30326
Tel: (404) 554-0777
mharman@harmanlaw.com

David C. O'Mara
THE O'MARA LAW FIRM
311 East Liberty Street
Reno, NV 89501
david@omaralaw.net

Marc A. Wites
WITES LAW FIRM
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 933-4400
mwites@witeslaw.com

Jeffrey R. Krinsk
FINKELSTEIN & KRINSK LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
jrk@classactionlaw.com

*Other Plaintiffs' Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2019, the foregoing document was filed with the Court's

CM/ECF system, which will provide notice of electronic filing to all counsel of record.


/s/ Ben Barnow