# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHALL SMITH, BRANDON HERMAN, CHAD PATTERSON, JEFFERY ROBERTS, MICHAEL WILL, SUSAN WINSTEAD, ROBERT BOHANNON, HOLLY BUCKINGHAM, RICHARD MORELLO, JR., ROBERT HARRIS, AMANDA LARISCY, CHARLES NEWMAN, and PAUL CHRISTIANSEN individually and on behalf of all similarly situated persons, | Civil Action No. 1:18-cv-4990 |
| Plaintiffs, | CLASS ACTION |
| | Jury Trial Demanded |
| v. | Hon. Edmond E. Chang |
| COMPLYRIGHT, INC., a Minnesota corporation, | |
| Defendant. | |

**PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND PAYMENT OF REPRESENTATIVE PLAINTIFF SERVICE AWARDS AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................3

    I.    The Data Breach ....................................................................................................3

    II.    Procedural History ................................................................................................3

ARGUMENT ..........................................................................................................................5

    I.    The Requested Attorneys' Fee Award Is Reasonable and Appropriate ...........................5

        A.    Fee Awards in Similar Common Fund Cases.......................................................7

        B.    The Risk of Non-Payment Counsel Accepted.....................................................7

        C.    The Quality of Counsel's Performance .................................................................8

        D.    The Complexity, Length, and Expense of the Litigation ....................................9

        E.    The Stakes of the Litigation ...............................................................................10

        F.    A Lodestar Cross-Check Confirms the Requested Award Is Reasonable..........10

    II.    The Requested Costs and Expenses Award Is Reasonable and Appropriate .................11

    III.    The Requested Service Awards Are Reasonable and Appropriate ...............................12

CONCLUSION.......................................................................................................................13

## **TABLE OF AUTHORITIES**

Cases

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   Nos. 07–CV–2898, 09–CV–2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)........................13

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ......................................................................................12, 13

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
   No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015).................................13

*Donovan v. Estate of Frank E. Fitzsimmons*,
   778 F.2d 298 (7th Cir. 1985) ......................................................................................9

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) ......................................................................................7

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*,
   212 F.R.D. 400 (E.D. Wis. 2002) ...........................................................................11, 12

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) ......................................................................................11

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ......................................................................................7

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
   80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................................6, 7

*In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.*,
   733 F. Supp. 2d 997 (E.D. Wis. 2010)....................................................................10

*In re Synthroid Mktg. Litig.*,
   325 F.3d 974 (7th Cir. 2003) ......................................................................................7

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ......................................................................................5

*In re Trans Union Corp. Privacy Litig.*,
   629 F.3d 741 (7th Cir. 2011) ......................................................................................7, 8

*Kolinek v. Walgreen Co.*,
   311 F.R.D. 483 (N.D. Ill. 2015)...............................................................................7, 13

*Mathur v. Bd. of Tr. of S. Ill. Univ.*,
   317 F.3d 738 (7th Cir. 2003) ........................................................................................10

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009).........................................................................6

*Pearson v. NBTY, Inc.*,
   772 F.3d 778 (7th Cir. 2014) ........................................................................................6

*Silverman v. Motorola Solutions, Inc.*,
   739 F.3d 956 (7th Cir. 2013) ........................................................................................7

<u>Federal Rules</u>

Fed. R. Civ. P. 23(h) .............................................................................................................5

## INTRODUCTION

Plaintiffs and Co-Lead Settlement Class Counsel respectfully request the Court award attorneys' fees of $908,333 and reimbursement of $23,723.85 for costs and expenses advanced in furtherance of this litigation. Pursuant to the Class Action Settlement Agreement granted preliminary approval on May 24, 2019, amounts awarded by the Court will be paid from the Settlement Fund. Co-Lead Settlement Class Counsel will allocate attorneys' fees, costs, and expenses to the Plaintiffs' firms that worked on the litigation. Defendant ComplyRight, Inc. ("ComplyRight") does not oppose the requested awards.

The requested attorneys' fee award is reasonable, appropriate, and consistent with the market rate for legal services in complex class actions, including data breach cases. The request amounts to 33.3[1] percent of the monetary recovery counsel achieved on behalf of the Settlement Class, which is well within the range of reasonable in complex class action cases such as this matter. This calculation excludes the amounts ComplyRight will pay for providing the Protection Plan to Settlement Class Members submitting valid claims selecting that benefit. The significant risk of non-payment Plaintiffs' counsel accepted in taking on this contingency matter, the quality of counsel's performance, the difficulty, length, and expense of the litigation, and the stakes of the matter further demonstrate the requested award is reasonable and appropriate.

A lodestar cross-check further reinforces the reasonableness of the requested award. Co-Lead Settlement Class Counsels' firms and other Plaintiffs' firms working on the case collectively report having spent more than 1,311 hours advancing the litigation and a cumulative lodestar of in

---

[1] These ratios were calculated as follows: (Requested Fee Award) / (Settlement Fund–Notice and Administrative Costs)). Pursuant to the Settlement, no more than $300,000 in notice and administrative costs shall be paid from the Settlement Fund. Using that maximum figure, the numerical calculations are as follows: $908,333 / ($3,025,000-$300,000) = .3333.

excess of $794,050, calculated using current billing rates.[2] Approval of the requested award will result in an eminently reasonable lodestar multiplier of 1.14[3]—a figure that will be further reduced by the additional work Co-Lead Settlement Class Counsel will perform in support of the Settlement in the future, including preparing for and deposing a ComplyRight employee and a third-party expert familiar with the Data Breach to conclude the confirmatory discovery process, drafting and filing the final approval papers, appearing at the final fairness hearing, assisting with claims administration, and resolving appeals (if any).

The request for reimbursement of $23,723.85 in costs and expenses is also reasonable and appropriate. The costs and expenses were incurred in advancing the matter, were reasonable and necessary, and would generally be billed to clients in the private market.

Co-Lead Settlement Class Counsel also request that the Court award payment of service awards in the amount of $2,500 to each Representative Plaintiff. Representative Plaintiffs stepped forward to represent the interests of the Settlement Class in this complex case, were involved in the drafting and review of complaints, responded to discovery requests and requests for information from counsel, produced documents, and reviewed and approved of the Settlement set forth in the Settlement Agreement. They were also willing to come forward even though ComplyRight had a business relationship with prior, current, and potential employers. The requested service awards are reasonable and consistent with awards approved in similar class action matters.

Co-Lead Settlement Class Counsel respectfully request that the Court grant this petition.

---

[2] Declarations for each firm reporting time, costs, and expenses are attached hereto as Exhibits A through I. A summary of the time, costs, and expenses as reported by Plaintiffs' counsel is appended to the Declaration of Ben Barnow ("Barnow Decl.), attached as Exhibit A hereto.

[3] $908,333 (requested award) / $794,050 (lodestar) = 1.14.

2

## BACKGROUND

### A.    The Data Breach

On July 13, 2018, ComplyRight sent letters to Plaintiffs and approximately 662,000 others informing them that from at least April 20, 2018 to May 22, 2018, an unauthorized person or persons illegally intruded into its website and accessed or viewed their name, address, telephone number, email address, and Social Security number (the "Data Breach"). Ex. A: Barnow Decl. ¶ 10. Settlement Class Members' personal information had been entered into ComplyRight's website by, or on behalf of, employers or payers to prepare tax-related forms, for example, forms 1099 and W-2. Ex. A: Barnow Decl. ¶ 10.

### B.    Procedural History

Following ComplyRight's sending of letters announcing the Data Breach, five class action complaints were filed in four federal district asserting claims against ComplyRight.[4] Barnow Decl. ¶ 12. An additional case asserting claims against ComplyRight was filed in California state court and subsequently removed to a California federal court. Barnow Decl. ¶ 12.

On August 10, 2018, the plaintiffs in the *Bohannon* case, filed in the Southern District of Florida, petitioned the Judicial Panel on Multidistrict Litigation ("JPML") for transfer of all related actions concerning the Data Breach to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. Barnow Decl. ¶ 13. In response to that filing, Co-Lead Settlement Class Counsel reached out to Plaintiffs' counsel in each of the related cases and counsel for ComplyRight to discuss informal consolidation of the

---

[4] *See Winstead v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.); *Bohannon v. ComplyRight, Inc.*, Case No. 0:18-cv-61730-BB (S.D. Fla.); *Roberts v. ComplyRight, Inc.*, Case No. 0:18-cv-61836-CMA (S.D. Fla.); *Morello v. ComplyRight, Inc.*, Case No. 2:18-cv-01480-RFB-GWF (D. Nev.); and *Newman v. ComplyRight, Inc.*, Case No. 2:18-cv-01258-NJ (E.D. Wis.).

related cases before a single court. Barnow Decl. ¶ 15. After several discussions and without the need for judicial intervention, an agreement was reached to informally consolidate all related actions before this Court. Barnow Decl. ¶ 15.

On September 10, 2018, Plaintiffs filed their Consolidated Amended Class Action Complaint ("CAC") against ComplyRight, asserting 26 causes of action on behalf of 12 plaintiffs and a nationwide putative class. ECF No. 27. Plaintiffs quick and efficient self-organization saved a tremendous amount of time and expense, as well as reduced the burden on the JPML and potential transferor courts.

On October 24, 2018, ComplyRight moved to dismiss the CAC, moved to strike Plaintiffs' class allegations, and filed its Answer and Affirmative Defenses. ECF Nos. 38, 41, 43. On November 14, 2018, Plaintiffs moved to strike certain of ComplyRight's affirmative defenses and, on November 26, 2018, Plaintiffs filed briefs in opposition to ComplyRight's motions to dismiss and motion to strike class allegations. ECF Nos. 59, 60. After discussions between counsel, ComplyRight filed an Amended Answer and Affirmative Defenses on December 10, 2018, reducing the number of affirmative defenses asserted from 41 to 10. ECF No. 65.

Pursuant to the Northern District of Illinois' Mandatory Initial Discovery Pilot Program, the Settling Parties exchanged disclosures, written discovery, and documents important to the claims and defenses at issue. Barnow Decl. ¶ 20. ComplyRight also produced additional key documents relating to the Data Breach during the course of settlement negotiations and the confirmatory discovery process provided for by the Settlement. Barnow Decl. ¶ 20. The documents collectively produced by ComplyRight detail ComplyRight's security measures in place prior to the Data Breach, explain ComplyRight's discovery the Data Breach, describe ComplyRight's investigation into the cause and scope of the Data Breach, detail a third-party forensic expert's

analysis of the Data Breach, and identify the additional security measures ComplyRight put in place in response to its discovery of the Data Breach. Barnow Decl. ¶ 20. As part of the confirmatory discovery process provided for by the Settlement, Co-Lead Settlement Class Counsel will also be deposing a senior ComplyRight employee and a third-party expert familiar with the Data Breach, which are currently scheduled for September 4, 2019, in Chicago, Illinois. Barnow Decl. ¶ 20.

The Settling Parties engaged in several rounds of arms'-length settlement negotiations prior to reaching the Settlement. Barnow Decl. ¶¶ 21–24. The Settling Parties participated in mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS on December 11, 2018, and again on January 31, 2019. Barnow Decl. ¶¶ 22–23. The Settling Parties continued to negotiate with the assistance of Judge Andersen in the months following the second mediation. Barnow Decl. ¶¶ 23. After over four months of negotiations, the Settling Parties executed a Memorandum of Understanding on April 15, 2019. Barnow Decl. ¶ 23. The Settlement Agreement was executed on May 22, 2019, and preliminary approval was granted on May 24, 2019. Barnow Decl. ¶¶ 24–26; ECF No. 88.

## ARGUMENT

### I. The Requested Attorneys' Fee Award Is Reasonable and Appropriate

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[W]hen deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (collecting cases). To do so, courts "estimate the terms of the contract that private plaintiffs would have

negotiated with their lawyers, had bargaining occurred at the outset of the case (that is, when the risk of loss still existed)." *Id.* In determining the market rate for legal fees, courts consider awards rendered in analogous cases, the risk of nonpayment counsel agreed to bear, the quality of counsels' performance, the complexity, length, and expense of the matter, and the stakes of the case. *See In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (collecting cases).

The percentage-of-recovery method is the favored method for calculating reasonable attorneys' fees in common fund cases, such as this matter. *Id.* at 844; *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) ("The 'percentage of the fee' [sic] method is preferable because it more closely replicates the contingency fee market rate for counsel's legal services."). To calculate the percentage of recovery, courts compare the requested fee award to the requested fee award plus what the class received. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014).

Even excluding the amounts ComplyRight will pay to provide the Protection Plan option under the Settlement—a significant benefit under the Settlement—the requested fee award equates to approximately 33.3 percent of the monetary recovery achieved by the Settlement. That ratio is well within the range of what is considered a reasonable fee award in a complex class action. The appropriateness of such award is further supported by the risk counsel accepted in taking on this matter, the quality of counsel's performance, the complexity, length, and expense of litigating this matter on a contingent basis, and the stakes of this litigation.

### A. Fee Awards in Similar Common Fund Cases

"As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases." *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d at 845.

Awards in analogous cases demonstrate that a fee request of approximately 33.3 percent of the recovery achieved for the Settlement Class is consistent with the market price for legal services. "[T]he usual range for contingent fees is between 33 and 50 percent." *Id.* (quoting *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992)). And a number of courts in this circuit have approved fee awards "at or about the 33.3%-of-fund level" in similar complex class action matters. *See id.* at 862 (awarding attorneys' fees of 1/3 of a $46 million common fund) (collecting cases); *In re Potash Antitrust Litig.,* No. 08–cv–6910 (ECF No. 592) (N.D. Ill. June 12, 2013) (awarding 1/3 of the $20.25 million fund); *see also In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) (affirming the district court's award of 30% of the first $10 million to counsel representing the consumer class); *Gaskill v. Gordon*, 160 F.3d 361 (7th Cir. 1998) (affirming district court's award of 38% of a common fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (awarding attorney's fees amounting to 36% of the settlement fund less administrative costs and incentive awards).

This factor favors approval of the requested fee award.

### B. The Risk of Non-Payment Counsel Accepted

Courts emphasize the severity of the financial risk class counsel assumed in taking on a class action when determining the reasonableness of a fee request. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d at 847–48; *see also Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of

nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million").

At the initiation of the litigation, there was no evidence ComplyRight had any interest in settling the matter. Given the reported nature of the Data Breach, Co-Lead Settlement Class Counsel knew the expenditure of significant time, effort, and money would likely be needed to achieve a successful resolve litigating this matter to conclusion. They understood ComplyRight would likely argue that Class Members suffered no damages as a result of the Data Breach and that damages incurred were not traceable to the Data Breach, as opposed to another data breach. Co-Lead Settlement Class Counsel also knew that to litigate this matter to conclusion they would need to prevail at the motion to dismiss and class certification stages, at trial, and likely on appeal. Prevailing at the motion to dismiss and class certification stages of a data breach case is never a sure thing, particularly in the evolving realm of the law on privacy and data breaches. And prevailing at trial and on appeal is never guaranteed.

Accordingly, the significant risk counsel accepted in taking on this matter on a contingency basis weighs strongly in favor of approving the requested award.

## C. The Quality of Counsel's Performance

The valuable and easy to claim benefits made available to Settlement Class Members under the Settlement evidences that Co-Lead Settlement Class Counsel's performance was excellent in this litigation. Co-Lead Settlement Class Counsel achieved a fair, reasonable, and adequate remedy for Settlement Class Members when compared to the facts and law at issue in this litigation. Co-

Lead Settlement Class Counsel: (1) negotiated informal consolidation of all related cases before the Court; (2) prepared and filed Plaintiffs' Consolidated Class Action Complaint and Plaintiffs' Second Amended Consolidated Complaint; (2) briefed a motion to dismiss and a motion to strike class allegations; (3) engaged in discovery, including propounding and responding to written discovery and producing and reviewing documents; and (4) engaged in several rounds of arm's length settlement negotiations with ComplyRight. Barnow Decl. ¶¶ 10–20.

Co-Lead Settlement Class Counsel's efforts resulted in a Settlement pursuant to which ComplyRight agreed to pay $3,025,000 into the Settlement Fund and, additionally, pay all costs of providing the Protection Plan to Settlement Class Members selecting that option. Barnow Decl. ¶¶ 30–34. The Settlement also includes a robust injunctive relief component specifically designed to ensure Settlement Class Members' personal information in ComplyRight's possession is protected in the future. Barnow Decl. ¶ 35. These benefits were negotiated and obtained against ComplyRight's strong defense mounted by experienced data breach attorneys. The Settlement provides real benefits that will be available to Settlement Class Members in the near future, as opposed to years from now, further enhancing the value of the Settlement to Settlement Class Members. *See Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 n.3 (7th Cir. 1985) (recognizing that at a prime interest rate of 12.5% a $2 million settlement sum today is worth the same as a $3.6 million recovery five years from now). This factor favors approval of the requested award.

### D.  The Complexity, Length, and Expense of the Litigation

By nature, data breach class actions are complex, risky, and expensive to litigate. This case was no exception. At the initiation of this case, Co-Lead Settlement Class Counsel knew that prosecuting this matter would likely involve lengthy discovery, briefing, argument, trial, and

potential appeals, requiring hundreds, if not thousands, of hours of attorney time to complete, and the advancement of significant out-of-pocket costs and expenses. Co-Lead Settlement Class Counsel's firms and other Plaintiffs' counsels' firms working on the matter avoided duplication of effort and collectively report having spent in 1,311 hours advancing the matter for a collective lodestar of more than $794,050. Barnow Decl. Ex. 1. Based on their experience in similar cases, that number could have easily doubled or tripled with further discovery and motion practice through class certification. Co-Lead Settlement Class Counsel will also spend additional time concluding the confirmatory discovery process, drafting and filing Plaintiffs' Motion for Final Approval of the Settlement, preparing for and appearing at the final fairness hearing, overseeing claims administration, and resolving any appeals. This factor favors approval of the requested awards.

### E.  The Stakes of the Litigation

Settlement Class Members' claims were potentially subject to a number of defenses, and the possibility existed that the Court would dismiss certain of Plaintiffs' claims, decline to certify any class, or that Plaintiffs would not prevail at trial. The uncertain result of this litigation at its outset supports approval of the requested award.

### F.  A Lodestar Cross-Check Confirms the Requested Award Is Reasonable

A lodestar cross-check further confirms the reasonableness of the requested fee award. Courts using the lodestar method first multiply the total number of hours reasonably expended on the litigation by reasonable hourly rates. *See In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (citing *Mathur v. Bd. of Tr. of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003)). That figure—the lodestar—is then divided into the

10

proposed fee award to arrive at a lodestar multiplier used to compare to multipliers approved in other cases. *See id.*

Attached in support of Plaintiffs' motion are sworn declarations for each Plaintiffs' firm that worked on this matter. *See* Exhibits A–I. The declarant-attorney in each declaration attests to the total time their firm spent litigating this matter and the hourly rates of the attorneys from their firm. *See id.* Exhibit 1 to the Declaration of Ben Barnow summarizes the total hours and lodestar as reported by the firms involved in the litigation. Altogether, Co-Lead Settlement Class Counsel's firms and the other Plaintiffs' firms that worked on this matter reported having spent in excess of 1,311 hours advancing the matter and a collective lodestar in excess of $794,050 calculated at current rates. The requested award of $908,333 represents a lodestar multiplier of approximately 1.14.[5]

This reasonable multiplier further makes clear that the requested award of attorneys' fees is within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991) (noting that "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four have been approved")). Accordingly, given the minimal multiplier, this factor heavily favors approval of the requested award of attorneys' fees.

## II.  The Requested Costs and Expenses Award Is Reasonable and Appropriate

Pursuant to a market-based approach, attorneys who generate a benefit for the class are entitled to recover reasonable litigation expenses incurred to advance the matter. *See Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412

---

[5] $908,333 / $794,050 = 1.14.

(E.D. Wis. 2002). Plaintiffs seek reimbursement of $23,723.85 for costs and expenses incurred in furtherance of this litigation. *See* Barnow Decl. Ex. 1 (summarizing costs and expenses reported). These costs and expenses were incurred in furtherance of the litigation for filing fees, transcript fees, postage and messenger delivery charges, traveling, conference call charges, and mediation fees. The requested costs and expenses are reasonable and consistent with what the market would award in a private setting.

### III. The Requested Service Awards Are Reasonable and Appropriate

Representative plaintiff service awards encourage members of a class to become class representatives and to reward individual efforts taken on behalf of a class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (awarding incentive award of $25,000). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

The requested award of $2,500 to each Plaintiff is reasonable, justified, and accords with common practice. Each Plaintiff stepped forward and volunteered to undertake the responsibilities, risks, and scrutiny attendant with bringing this class action. They were also actively involved throughout the litigation. Among other things, Plaintiffs provided information and approved of complaints, provided counsel with information for initial disclosures and written discovery responses, produced documents, and reviewed and approved of the Settlement. They were also willing to sit for depositions and perform their duties as counsel and the Court required. Moreover, litigating publicly against business partners of their current and former employers was also risky, and often plaintiffs in data breach cases risk further losses of privacy just by stepping forward—all of which justifies a reasonable service award.

12

Courts regularly award service fees in excess of $2,500. *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (approving $25,000 incentive award); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07–CV–2898, 09–CV–2026, 2012 WL 651727, at *16 (N.D. Ill. Feb. 28, 2012) (awarding a $25,000 incentive awards to each of seven plaintiffs); *Cook*, 142 F.3d at 1016 (awarding incentive award of $25,000); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding $5,000 incentive awards where the case did not proceed past the earliest stages of discovery). Plaintiffs' participation and willingness to undertake the responsibilities and risks attendant with bringing this class action warrant that each Plaintiff is awarded a service award of $2,500.

## **CONCLUSION**

As the above analysis shows, the requested award of attorneys' fees, costs, and expenses, and requested service awards, are reasonable, appropriate, and should be approved. Plaintiffs, individually and on behalf of the Settlement Class, by and through Co-Lead Settlement Class Counsel, pray that this Honorable Court enter an order:

> (a) granting Plaintiffs' request for attorneys' fees in the amount of $908,333; costs and expenses in the amount of $23,723.85; and service awards for Representative Plaintiffs in the amount of $2,500 each; and

> (b) granting such other and additional relief as the Court may deem just and appropriate.

Dated:  August 26, 2019                        Respectfully submitted,

                                               /s/ Ben Barnow

                                               Ben Barnow
                                               Erich P. Schork
                                               BARNOW AND ASSOCIATES, P.C.
                                               One North LaSalle Street, Suite 4600
                                               Chicago, IL 60602
                                               Tel: (312) 621-2000
                                               Fax: (312)-641-5504
                                               b.barnow@barnowlaw.com
                                               e.schork@barnowlaw.com

                                               Laurence D. King
                                               Matthew B. George
                                               KAPLAN FOX & KILSHEIMER LLP
                                               350 Sansome Street, Suite 400
                                               San Francisco, CA 94104
                                               Telephone: (415) 772-4700
                                               Facsimile: (415) 772-4707
                                               lking@kaplanfox.com
                                               mgeorge@kaplanfox.com

                                               *Co-Lead Settlement Class Counsel*

                                               Shpetim Ademi
                                               ADEMI & O'REILLY, LLP
                                               3620 East Layton Avenue
                                               Cudahy, WI 53110
                                               (414) 482-8000
                                               (414) 482-8001 (fax)
                                               sademi@ademilaw.com

                                               Jeremiah Frei-Pearson
                                               FINKELSTEIN, BLANKINSHIP,
                                               FREI-PEARSON & GARBER, LLP
                                               445 Hamilton Avenue, Suite 605
                                               White Plains, New York 10601
                                               Tel: (914) 298-3281
                                               Fax: (914) 824-1561
                                               jfrei-pearson@fbfglaw.com

14

Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
bfj@chimicles.com
mbd@chimicles.com

Aron D. Robinson
LAW OFFICES OF ARON D. ROBINSON
180 W. Washington, Suite 700
Chicago, IL 60602
Tel: (312) 857-9050
Fax: (312) 857-9054
adroblaw@aol.com

*Plaintiffs' Executive Committee*

Matthew Harman
HARMAN LAW FIRM
3575 Piedmont Rd NE Bldg. 15, Suite 1040
Atlanta, GA 30305
Tel: (404) 554-0777
mharman@harmanlaw.com

David C. O'Mara
THE O'MARA LAW FIRM
311 East Liberty Street
Reno, NV 89501
david@omaralaw.net

Marc A. Wites
WITES LAW FIRM
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 933-4400
mwites@witeslaw.com

Jeffrey R. Krinsk
FINKELSTEIN & KRINSK LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
jrk@classactionlaw.com

*Other Plaintiffs' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 26, 2019, the foregoing document was filed with the Court's

CM/ECF system, which will provide notice of electronic filing to all counsel of record.


/s/ Ben Barnow