# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARSHALL SMITH, BRANDON HERMAN, CHAD PATTERSON, JEFFERY ROBERTS, MICHAEL WILL, SUSAN WINSTEAD, ROBERT BOHANNON, HOLLY BUCKINGHAM, RICHARD MORELLO, JR., ROBERT HARRIS, AMANDA LARISCY, CHARLES NEWMAN, and PAUL CHRISTIANSEN individually and on behalf of all similarly situated persons,<br><br>        Plaintiffs,<br><br>  v.<br><br>COMPLYRIGHT, INC., a Minnesota corporation,<br><br>        Defendant. | Civil Action No. 1:18-cv-4990<br><br>CLASS ACTION<br><br>Jury Trial Demanded<br><br>Hon. Edmond E. Chang |

**DECLARATION OF BEN BARNOW IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS AND EXPENSES, AND PAYMENT OF REPRESENTATIVE PLAINTIFF SERVICE AWARDS**

I, BEN BARNOW, declare as follows:

## I. INTRODUCTION

1. I am an attorney duly licensed to practice law in the State of Illinois and the State of New York.

2. I am one of Court-appointed Co-Lead Settlement Class Counsel in the above-captioned matter.

3. I have been practicing law approximately 47 years. During the last twenty-plus years, I have successfully resolved some of the nation's largest class action lawsuits, including a number of high-profile data breach class actions.

4. I submit this declaration in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Payment of Representative Plaintiff Service Awards. I have personal knowledge of the matters stated herein and, if called upon, I could and would testify competently thereto.

## II. THE REQUESTED ATTORNEYS' FEE AWARD IS REASONABLE AND APPROPRIATE

5. This declaration describes the background of the litigation, including its procedural history, motion practice, settlement negotiations, and other activities.

6. A significant amount of work went into the successful resolution of this matter. Plaintiffs' counsel collectively report having expended 1,311 hours working on the litigation and a lodestar of in excess of $794,050 calculated at current rates. Plaintiffs' counsel also report having incurred costs and expenses in excess of $23,723.85 in furtherance of the litigation. Co-Lead Settlement Class Counsel will incur additional time, costs, and expenses completing the confirmatory discovery process, preparing and filing Representative Plaintiffs' Motion for Final Approval of Class Action Settlement Agreement, appearing at the Final Fairness Hearing, addressing appeals (if any), responding to Settlement Class Member inquiries regarding the Settlement, and overseeing administration of the Settlement.

7. Summaries of the attorney time, costs, and expenses incurred by my firm on the litigation appear below. The attorney declarations of Laurence D. King of Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Shpetim Ademi of Ademi & O'Reilly, LLP, Jeremiah Frei-Pearson of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, Benjamin F. Johns of Chimicles

& Tikellis LLP, Aron D. Robinson of the Law Offices of Aron D. Robinson, David C. O'Mara of the O'Mara Law Firm, Matthew Harman of Harman Law Firm LLC, and Jeffrey R. Krinsk of Finkelstein & Krinsk LLP, filed herewith, include a summary of the time, costs, and expenses reported by the other Plaintiffs' firms that worked on the matter. A summary of the collective time, costs, and expenses as reported by Plaintiffs' counsel is attached hereto as Exhibit 1.

8. Plaintiffs request an award of attorneys' fees in the amount of $908,333, reimbursement of $23,723.85 for costs and expenses incurred in furtherance of the litigation, and a $2,500 award for each Representative Plaintiff for their service on behalf of the Settlement Class. ComplyRight does not oppose these requested awards, which will be paid from the Settlement Fund. In accordance with best practices, the Parties did not negotiate attorneys' fees, costs, and expenses, or service awards until after agreement was reached on all other substantive terms of the Settlement.

9. Excluding the amount ComplyRight will pay providing the Protection Plan to certain Settlement Class Members who submit valid claims therefor —a significant benefit of the Settlement—the requested attorneys' fee award equates to a lodestar multiplier of 1.14. This multiplier will necessarily be reduced by further work of Co-Lead Settlement Class Counsel, including deposing a ComplyRight employee and also deposing a third-party expert familiar with the Data Breach, preparing and filing Plaintiffs' motion for final approval of the Settlement, appearing at the final fairness hearing, answering Settlement Class Members' inquiries regarding the Settlement, overseeing settlement administration, and resolving appeals, if any. The requested award represents compensation for the significant work undertaken, costs and expenses incurred, and risks accepted by Plaintiffs' counsel in this actively litigated matter. As set forth in the memorandum filed herewith, the requested awards are reasonable and justified.

A. **Case Initiation, Pleadings, and Discovery**

10. This is a data breach class action. On July 13, 2018, ComplyRight sent letters to Plaintiffs and approximately 662,000 others informing them that from at least April 20, 2018 to May 22, 2018, an unauthorized person or persons illegally intruded into its website and accessed or viewed their name, address, telephone number, email address, and Social Security number (the "Data Breach"). The letters explained to Settlement Class Members that ComplyRight came into possession of their personal information after the information was entered into its website by, or on behalf of, employers or payers to prepare tax-related forms, such as 1099 forms and W-2 forms.

11. Shortly after the letters went out, my firm began to receive calls from other plaintiff's counsel and potential clients regarding the Data Breach.

12. The following class action complaints were filed asserting claims against ComplyRight relating to the Data Breach: *Winstead v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.) (filed on July 20, 2019); *Bohannon v. ComplyRight, Inc.*, Case No. 0:18-cv-61730-BB (S.D. Fla.) (filed on July 26, 2019); *Roberts v. ComplyRight, Inc.*, Case No. 0:18-cv-61836-CMA (S.D. Fla.) (filed on Aug. 7, 2019); *Morello v. ComplyRight, Inc.*, Case No. 2:18-cv-01480-RFB-GWF (D. Nev.) (filed on Aug. 9, 2018); *Newman v. ComplyRight, Inc.*, Case No. 2:18-cv-01258-NJ (E.D. Wis.) (filed on Aug. 14, 2019); and *Christiansen v. ComplyRight, Inc.*, No. 18-cv-1920 (S.D. Cal.) (filed on Aug. 7, 2018, and removed to federal court on Oct. 25, 2018). Prior to informal consolidation, I represented the plaintiffs in the *Winstead, Morello,* and *Newman* cases.

13. On August 10, 2018, plaintiffs' counsel in the *Bohannon* case petitioned the Judicial Panel on Multidistrict Litigation for transfer of all related actions concerning the Data Breach to the United States District Court for the Southern District of Florida for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407.

14. During the last twenty-plus years, I have led and resolved a number of MDL matters, including data breach cases, and argued before the Judicial Panel on Multidistrict Litigation (the "Panel") on several occasions. In recent years, the Panel has stressed that counsel should attempt to reach agreement on informal consolidation whenever possible and has been hesitant to create MDLs for matters involving only a half-dozen or so cases, such as this matter.

15. Following the Panel's guidance, I reached out to Plaintiffs' counsel in all related cases and ComplyRight's counsel to discuss informal consolidation of all cases related to the Data Breach. After several discussions, an agreement was reached providing that (1) all plaintiffs from the related cases pending in federal court would be added to a consolidated class action complaint in the *Winstead* case; and (2) the MDL petition would be withdrawn.[1] Pursuant to that agreement, on August 30, 2018, Plaintiffs' counsel from the *Bohannon* case moved to withdraw their MDL petition. The Panel granted that request the next day.

16. On September 10, 2018, the Consolidated Class Action Complaint ("CAC") was filed, alleging 26 causes of action on behalf of 12 plaintiffs and a nationwide putative class. ECF No. 27. ComplyRight responded by moving to dismiss the CAC and to strike Plaintiffs' class allegations. ECF Nos. 38, 41. In accordance with the Northern District of Illinois' Mandatory Initial Discovery Pilot Program, ComplyRight also filed an answer asserting 41 affirmative defenses to the CAC. ECF No. 43.

17. On November 14, 2018, Plaintiffs moved to strike certain of ComplyRight's affirmative defenses. After discussions between counsel, ComplyRight filed an Amended Answer

---

[1] At the time the agreement was reached, the *Christiansen* case had not yet been removed to federal court.

and Affirmative Defenses on December 10, 2018, reducing the number of affirmative defenses asserted from forty-one (41) to ten (10). ECF No. 65.

18. On November 26, 2018, Plaintiffs filed their oppositions to ComplyRight's motion to dismiss the CAC and to strike their class allegations. ECF Nos. 59, 60. ComplyRight's reply briefs in support of their motions were filed on December 10, 2018.

19. Pursuant to the Northern District of Illinois' Mandatory Initial Discovery Pilot Program, on November 20, 2019, the Parties exchanged initial disclosures and produced certain documents relating to the claims and defenses at issue. On December 3, 2018, the Settling Parties exchanged requests for production of documents, and the Parties' responses and objections to the document requests were served on February 14, 2019.

20. During discovery, settlement negotiations, and the confirmatory discovery process provided for by the Settlement, ComplyRight produced several important documents to Co-Lead Settlement Class Counsel regarding the Data Breach, including documents providing information regarding ComplyRight's security measures in place prior to the Data Breach, explaining how ComplyRight discovered the Data Breach, describing ComplyRight's investigation into the cause and scope of the Data Breach, detailing a third-party forensic expert's analysis of the Data Breach, and the describing additional security measures ComplyRight put in place in response to its discovery of the Data Breach. Pursuant to the confirmatory discovery process provided for by the Settlement, ComplyRight has also agreed to produce a senior network administrator and a third-party forensic expert familiar with the Data Breach for deposition on September 4, 2019.

B. **Settlement Negotiations**

21.     The Settlement is the product of extensive, arm's length negotiations conducted by experienced counsel.

22.     On December 11, 2018, Larry King, Erich Schork, and I attended a day-long mediation with ComplyRight's counsel before the Hon. R. Andersen (Ret.) of JAMS. While the unable to reach an agreement at that time, the Parties continued to discuss potential resolution following the conclusion of the mediation.

23.     A second mediation occurred on January 31, 2019. No agreement was finalized during that mediation and negotiations continued over the course of the following months. On April 15, 2019, the parties executed a Memorandum of Understanding ("MOU").

24.     After the terms of the Settlement were finalized, Co-Lead Settlement Class Counsel worked with counsel for ComplyRight to finalize the language of the Settlement Agreement and with the claims administrator to finalize the notice documents and claim form. The Settlement Agreement was executed on May 20, 2019. ECF No. 83-1. On May 22, 2019, Plaintiffs filed a motion for preliminary approval of the Settlement and a Second Amended Consolidated Complaint, adding plaintiff Paul Christiansen. ECF Nos. 83, 84.

25.     On May 23, 2019, Co-Lead Settlement Class Counsel appeared before the Court to present Plaintiffs' motion for preliminary approval of the Settlement. Pursuant to the Court's guidance at the hearing, on the afternoon of May 23, 2019, the Parties jointly filed an amendment to the Settlement to revise certain requirements to object to the Settlement and correcting a scrivener's error in the Settlement. ECF No. 85.

26.     On May 24, 2019, in response to the Court's request at the preliminary approval hearing, the Settling Parties filed a revised proposed preliminary approval order with the Court.

ECF No. 87. The Court's Order granting preliminary approval of the Settlement was entered on May 24, 2019. ECF No. 88.

27. Pursuant to that preliminary approval order, Plaintiffs' motion for final approval of the Settlement and supporting memorandum must be filed on or before September 30, 2019. Co-Lead Settlement Class Counsel will spend additional time and effort researching, drafting, and finalizing the final approval papers and attending the October 7, 2019 final fairness hearing.

28. Class Counsel will continue to represent the interests of the Settlement Class in the future. Since entry of the Preliminary Approval Order, my firm has communicated with numerous individuals requesting information regarding the Settlement. Based on my experience, these inquiries will continue until long after the final fairness hearing. Additionally, in the event any appeal relating to the Settlement is filed, we will represent the Settlement Class in such proceedings.

**C. The Settlement Agreement**

29. Under the terms of the Settlement, the Settling Parties agreed to certification of the following Settlement Class for settlement purposes only:

> All persons whose Personal Information was maintained on ComplyRight's website during the Data Breach that occurred from at least April 20, 2018 through May 22, 2018, including all persons who were sent the July 13, 2018 letter informing them of the Data Breach.

SA ¶¶ 1.11, 2.14.[2] The following Persons are specifically excluded from the Settlement Class: (a) individuals who are or were during the Data Breach officers or directors of ComplyRight; (b) any person found to be criminally involved in the Data Breach; and (c) any judge presiding over this matter. SA ¶ 1.11.

---

[2] References to particular paragraphs of the Settlement are prefixed by "SA ¶."

30. The Settlement provides that ComplyRight shall pay $3,025,000 into an Escrow Account (the "Settlement Fund"). The Settlement Fund shall be used to pay valid claims submitted by Settlement Class Members selecting the Cash Option or the Reimbursement Option, the costs of notice and claims administration (not to exceed $300,000), and Court-approved attorneys' fees, costs, and expenses, and Representative Plaintiff service awards. ComplyRight is also responsible for paying the costs of the Protection Plan Option separate and apart from the Settlement Fund. SA ¶¶ 2.1, 2.8. No portion of the Settlement Fund shall revert back to ComplyRight. SA ¶ 2.13.

31. The Settlement provides Settlement Class Members with the option of claiming, at their selection, a cash payment, a protection plan, or payment for reimbursement of certain documented out-of-pocket expenses incurred as a result of the Data Breach. SA ¶ 2.3.

32. Settlement Class Members claiming the Cash Option under the Settlement shall be entitled to a cash payment. The amount of the cash payments is dependent on the value of valid claims submitted under the Cash Option and Reimbursement Option. After payment of the costs of Notice and Settlement Administration (not to exceed $300,000), and Court-awarded attorneys' fees, costs, expenses, and Representative Plaintiff Service Awards ("Administrative Expenses"), in the event that the total amount remaining in the Settlement Fund exceeds the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the Cash Option and Reimbursement Option shall be increased pro rata to exhaust the Fund. SA ¶ 2.10. In the event the total amount in the Settlement Fund after payment of Administrative Expenses is less than the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the cash option and reimbursement option shall be decreased pro rata to exhaust the fund. SA ¶ 2.11.

33. Under the Settlement, Settlement Class Members claiming the protection plan option shall receive from ComplyRight free-of-charge a two-year subscription to MyIDCare® to be provided by ID Experts Corp. to include (i) credit monitoring by Experian (or such other qualified company approved by Proposed Co-Lead Settlement Class Counsel; (ii) dark web monitoring; (iii) Fully Managed Recovery (full services); (iv) $1,000,000 insurance coverage for reimbursement of losses attributable to the Data Breach, which shall commence upon enrollment; (v) Member Advisory Services; (vi) Lost Wallet Assistance; and (vii) 24-Hour Customer Service for each of the above, as applicable. SA ¶ 2.4(a). Prior to activation, a Settlement Class member may transfer the Protection Plan to their spouse, significant other with whom they cohabitate, or child age twenty-five (25) or younger. SA ¶¶ 1.4, 2.4(b).

34. Under the Settlement, Settlement Class Members providing the requisite documentation shall be entitled to receive up to $200 as reimbursement of the following categories of expenses incurred as a result of the Data Breach and not reimbursed by insurance or another third party: (1) documented time spent as a result of the Data Breach of up to 3 hours at $15/hour; (2) money spent purchasing police reports because of the Data Breach; (3) late charges or other fees paid because of the Data Breach, including overdraft fees; and (4) other similar expenses directly related to the Data Breach and expended in good faith, at the Settlement Administrator's discretion. SA ¶ 2.6(b). As with the Cash Option, the value of payments made under the Reimbursement Option is dependent on the aggregate value of valid claims submitted under the Cash Option and Reimbursement Option, and may be increased or decreased pro rata in the same manner as the Cash Option described above. SA ¶¶ 2.10, 2.11.

35. The Settlement also requires that ComplyRight implement and maintain the following data security practices for a period of three (3) years following the Effective Date of the Settlement:

- An information security program containing policies, procedures, and technical controls;

- Controls regarding authentication of users who access ComplyRight's website and controls designed to prevent access by users in locations where illegitimate use of the ComplyRight website could originate;

- ComplyRight shall encrypt all Social Security numbers stored electronically;

- Regular and periodic training and education regarding the storage, handling, and destruction of personally identifiable information and nonpublic personal information for employees that handle those types of information; and

- Annual simulated penetration testing and procedures designed to monitor and address vulnerabilities to ComplyRight's information systems.

SA ¶ 2.15.

### III. BARNOW AND ASSOCIATES, P.C. TIME, COSTS, AND EXPENSES

36. Co-Lead Settlement Class Counsel from my firm and Kaplan Fox oversaw the prosecution of this litigation. Attorneys from my firm actively participated in all aspects of the Litigation, including pre-filing research and investigation, drafting complaints, negotiating coordination of the related cases, responding to ComplyRight's motion to dismiss and motion to strike class allegations, serving and responding to written discovery, reviewing documents, settlement negotiations, preparing settlement documentation, and assisting with claims administration and Settlement Class Member inquiries. I believe the time expended by my firm working on the litigation was reasonable and necessary in light of the complex nature of the litigation and ComplyRight's defense of the claims against it. My firm will spend additional time preparing for and participating in the September 4, 2019 confirmatory discovery depositions,

drafting Plaintiffs' motion for final approval of the Settlement and related papers, appearing at the final fairness hearing, addressing appeals (if any) regarding the Settlement, responding to Settlement Class Members' inquiries regarding the Settlement, and overseeing administration of the Settlement, for which no further compensation will be paid.

37. My firm prosecuted this case on a contingent-fee basis with no guarantee of recovery. Plaintiffs' counsel incurred 100% of the risk in litigating this Action. My firm was forced to forgo other employment in order to devote the time necessary to pursue this Litigation. My firm advanced expenses with the understanding that we would be paid a fee and receive reimbursement for expenses only if successful.

38. The information in this declaration regarding my firm's time and out-of-pocket expenses is taken from time and expense records prepared and maintained by the firm in the ordinary course of business using timekeeping software. The time records were prepared shortly thereafter by each attorney working on the litigation. The expense records are prepared from receipts, expense vouchers, check records, and other documents and are an accurate record of the expenses. I reviewed the printouts and also reviewed the backup documentation where necessary. The purpose of these reviews was to confirm the accuracy of the entries on the printouts as well as the necessity for, and reasonableness of, the time and expenses committed to the Litigation.

39. The summary below includes the name of each person from my firm who worked on the case, years of experience, hourly billing rates, and the total number of hours expended.

40. From inception to July 31, 2019, attorneys at my firm spent over 488 hours working on this Litigation, and my firm's lodestar is $301,305 calculated at current rates.

| Attorney | Year Admitted to Practice | Hours | Rate | Lodestar |
|---|---|---|---|---|
| Ben Barnow (Shareholder) | 1969 | 103 | $875 | $90,125 |
| Erich P. Schork (Officer) | 2006 | 154.10 | $700 | $108,870 |
| Jeffrey D. Blake (Associate) | 2013 | 207.10 | $450 | $93,195 |
| Anthony Parkhill (Associate) | 2014 | 23.8 | $400 | $10,115 |
| **Total** | | **488** | | **$301,305** |

41. The hourly rates shown above are the current usual and customary rates set by my firm for each individual. The rates reflect what would be charged to a fee-paying client in the private legal marketplace for complex litigation. The rates are also in line with the rates charged by other firms that handle complex cases and class actions.

42. The hours and lodestar incurred by my firm will increase because, as Co-Lead Settlement Class Counsel, Messrs. Schork and myself, along with Messrs. King and George from Kaplan Fox, are responsible for any further briefing in this case, preparing for and attending the final approval hearing, and post-hearing work, including issues relating to claims administration and implementation.

43. The costs and expenses for which reimbursement is sought are reasonable in amount and were necessary for the effective and efficient litigation of the case. The expenses are all of a type that, in my view, would normally be charged to a fee-paying client in the private legal marketplace. My firm has received reimbursement for similar costs and expenses in numerous cases.

44. My firm has incurred $7,465.58 in out-of-pocket litigation costs and expenses as summarized below:

| Expense Category | Total |
|---|---|
| Transcripts | $12.00 |
| FedEx/Delivery Charges | $35.10 |
| Filing Fees / Service Fees | $445.00 |
| Westlaw/PACER | $1,890.94 |
| Copying/Printing (external) | $28.00 |
| Conference Calls | $4.15 |
| Travel | $188.30 |
| Mediation Fees | $4,862.09 |
| **Total** | **$7,465.58** |

45. The following is additional information regarding these expenses:

   a. Transcripts: $12. The amount of $12 was paid for a single court transcript.

   b. FedEx/Delivery Charges: $35.1. This amount was paid to Federal Express to ship documents relating to the Litigation.

   c. Filing and Service Fees: $445.00. These costs were paid to file a class action complaint, for service fees, and to obtain a certificate of good standing to be filed in support of a motion to be admitted *pro hac vice*.

   d. Electronic Research: $1,890.94. The amount of $1,686.04 was paid to Westlaw for legal research, and the amount of $204.90 was paid to PACER for research in federal court filings. Westlaw is used to obtain access to legal research, factual databases, and for cite-checking of briefs. The expense amount detailed herein represents the out-of-pocket costs incurred by my firm in connection with the use of these services in connection with this litigation. My firm has a flat-rate contract with Westlaw for use of its services. When my firm utilizes Westlaw services, the case name is entered for the specific case being researched. At the end of each billing period in which a service is used, my firm's costs for such services are allocated to specific cases based on the percentage of use in connection with that specific case in the billing period. As a result of the contract negotiated by my firm, the Class enjoys substantial savings in comparison

with the "market-rate" for *a la carte* use of online legal research services, which some law firms pass on to their clients.

    e. <u>Conference Calls</u>: $4.15. This conference call charge was incurred to host a conference call on November 27, 2018, with ComplyRight's attorneys and certain other Plaintiffs' counsel. At my firm, each conference call is allocated to the relevant case shortly before or after the call occurs, and the conference call charges for each case are entered into our billing system.

    f. <u>Travel</u>. $188.30. The amount of $19 was paid for parking in downtown Deerfield, Illinois, to meet with plaintiff Winstead. The remaining $169.30 was paid to a car service to drive attorneys home on four occasions after working past 7 p.m. on the case.

    g. <u>Mediator Fees</u>: $4,682.09. My firm paid JAMS $4,682.09 for Judge Andersen's work as mediator in this matter.

 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of August 2019, at Chicago, Illinois.

Dated: August 26, 2019

              By:   */s/ Ben Barnow*
                   BEN BARNOW

Exhibit 1 - Summary of Attorneys' Fees, Costs, and Expenses Reported

| Firm Name | Hours | Lodestar | Costs and Expenses |
|---|---|---|---|
| Barnow and Associates, P.C. | 488 | $301,305 | $7,465.58 |
| Kaplan Fox & Kilsheimer LLP | 317.8 | $239,974 | $11,787.32 |
| Law Offices of Aron D. Robinson | 26.35 | $14,229 | $0 |
| Chimicles & Tikellis LLP | 241.8 | $116,025 | $1,728.14 |
| Finkelstein, Blankinship, Frei-Pearson & Garber, LLP | 54.7 | $29,220 | $295.01 |
| Harman Law Firm | 23.1 | $8,585 | $0 |
| The O'Mara Law Firm | 22 | $8,745 | $406.50 |
| Ademi & O'Reilly, LLP | 35.10 | $20,685 | $471.30 |
| Finkelstein & Krinsk LLP | 102.7 | $55,282 | $1,570 |
| | | | |
| **TOTAL** | **1,311.55** | **$794,050** | **$23,723.85** |