**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

MARSHALL SMITH, BRANDON
HERMAN, CHAD PATTERSON, JEFFERY
ROBERTS, MICHAEL WILL, SUSAN
WINSTEAD, ROBERT BOHANNON,
HOLLY BUCKINGHAM, RICHARD
MORELLO, JR., ROBERT HARRIS,
AMANDA LARISCY, CHARLES
NEWMAN, and PAUL CHRISTIANSEN
individually and on behalf of all similarly
situated persons,

      Plaintiffs,

  v.

COMPLYRIGHT, INC., a Minnesota
corporation,

      Defendant.

Civil Action No. 1:18-cv-4990

CLASS ACTION

Jury Trial Demanded

Hon. Edmond E. Chang

**REPRESENTATIVE PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**
**AGREEMENT AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ....................................................................................................2

   A.  Nature of the Litigation ..................................................................................2

   B.  Summary of the Settlement .........................................................................4

      1.  The Settlement Class .............................................................................4

      2.  Settlement Benefits ...............................................................................4

         a.  Settlement Fund ............................................................................4

         b.  The Protection Plan, Cash, and Reimbursement Options ............... 5

         c.  Security Measures .........................................................................7

         d.  The Costs of Notice and Settlement Administration .......................8

         e.  Attorneys' Fees, Costs, and Expenses and Representative
            Plaintiff Service Awards .................................................................8

   C.  Confirmatory Discovery ..................................................................................9

   D.  The Court-Approved Notice Program Was Substantial and Effective ........................ 10

III.   ARGUMENT .........................................................................................................12

   A.  Final Approval of the Settlement Is Appropriate ......................................... 13

      1.  The Settlement Class Was Well Represented ...................................... 13

      2.  The Settlement Was Reached as a Result of Hard-Fought,
         Arm's Length Negotiations .................................................................14

      3.  The Settlement Benefits Are Excellent, Taking into Consideration
         the Costs, Risks, and Delay of Trial and Potential Appeals ...................15

      4.  The Method of Distributing Relief Supports
         Final Approval of the Settlement ........................................................17

5.    The Terms of the Proposed Award of Attorneys' Fees
Supports Final Approval of the Settlement ...............................................18

6.    The Settling Parties' Agreements.............................................................. 19

7.    The Settlement Treats Settlement Class Members Equitably .................20

B.  The Settlement Class Should Be Certified for Settlement Purposes............................20

1.    The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied .......................20

      a.    The Settlement Class Is So Numerous that Joinder of
Individual Members Is Impracticable .............................................20

      b.    There Are Questions of Law and Fact Common
to the Settlement Class....................................................................21

      c.    Representative Plaintiffs' Claims Are Typical
of the Claims of the Settlement Class..............................................21

      d.    The Interests of Representative Plaintiffs and Co-Lead
Settlement Class Counsel Are Aligned with the Interests
of the Settlement Class ...................................................................22

2.    The Requirements of Rule 23(b)(3) Are Satisfied ................................. 23

      a.    Questions Common to All Settlement Class Members
Predominate Over Any Potential Individual Questions..................23

      b.    A Class Action Is the Superior Method to Fairly
and Efficiently Adjudicate the Matter ............................................24

IV.    CONCLUSION ...........................................................................................25

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................................................23, 25

*Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) ...........................................................................................12

*Butler v. Sears Roebuck & Co.*,
  727 F.3d 796 (7th Cir. 2013) ........................................................................................23, 24

*Carnegie v. Household Int'l Inc.*,
  376 F.3d 656 (7th Cir. 2004) ............................................................................................25

*Chi. Teachers Union v. Bd. of Educ. of Chi.*,
  No. 14-2843, 2015 WL 4667904 (7th Cir. Aug. 7, 2015) ......................................................23

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,
  657 F.2d 890 (7th Cir. 1981) ............................................................................................22

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).........................................................................................................10

*Fulton-Green v. Accolade, Inc.*,
  No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .........................................................16

*Gasper v. Linvatec Corp.*,
  167 F.R.D. 51 (N.D. Ill. 1996) ..........................................................................................22

*Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................22

*Grant v. Capital Mgmt. Servs., L.P.*,
  No. 10-CV-WQH BGS, 2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ......................................17

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)........................................................................................15

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................................16

*In re Chinese–Manufactured Drywall Prods. Liab. Litig.*,
  MDL No. 2047, 2012 WL 92498 (E.D. La. Jan. 10, 2012) ....................................................24

*In re Corrugated Container Antitrust Litig.*,
 643 F.2d 195, 208 (5th Cir. 1981) ...........................................................22

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
 80 F. Supp. 3d 838 (N.D. Ill. 2015) .......................................................19

*In re Deepwater Horizon*,
 739 F.3d 790 (5th Cir. 2014) .................................................................24

*In re Mego Fin. Corp. Sec. Litig.*,
 213 F.3d 454 (9th Cir. 2000) .................................................................13

*In re Oil Spill by Oil Rig Deepwater Horizon*,
 910 F. Supp. 2d 891 (E.D. La. 2012) ....................................................24

*In re Ready-Mixed Concrete Antitrust Litig.*,
 261 F.R.D. 154, 168 (S.D. Ind. 2009).....................................................22

*In re Sunrise Sec. Litig.*,
 131 F.R.D. 450 (E.D. Pa. 1990) .............................................................17

*Isby v. Bayh*,
 75 F.3d 1191 (7th Cir. 1996). ...............................................................12

*Keele v. Wexler*,
 149 F.3d 589 (7th Cir. 1998) .................................................................21

*Mace v. Van Ru Credit Corp.*,
 109 F.3d 338 (7th Cir. 1997) .................................................................25

*Messner v. Northshore Univ. Healthsystem*,
 669 F.3d 802 (7th Cir. 2012) .................................................................23

*Patrykus v. Gomilla*,
 121 F.R.D. 357 (N.D. Ill. 1988)..............................................................20

*Peters v. Nat'l R.R. Passenger Corp.*,
 966 F.2d 1483 (D.C. Cir. 1992) .............................................................10

*Phillips Co. v. Shutts*,
 472 U.S. 797 (1985)...............................................................................25

*Suchanek v. Sturm Foods, Inc.*,
 764 F.3d 750, 756 (7th Cir. 2014) .........................................................21

*Swanson v. Am. Consumer Indus.*,
   415 F.2d 1326 (7th Cir. 1969) ........................................................................20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) .........................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)...................................................................................21

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982)..............................................................................17

<u>Federal Rules</u>

Fed. R. Civ. P. 23(a) ..................................................................20, 21, 22, 23

Fed. R. Civ. P. 23(b)(3)..............................................................20, 23, 24, 25

Fed. R. Civ. P. 23(e) ...........................................................................Passim

Fed. R. Civ. P. 23(h) ......................................................................................19

<u>Miscellaneous Authority</u>

Manual for Complex Litigation (Fourth) § 11.423 (2004) ............................14

Manual for Complex Litigation (Fourth) § 13.12 (2004) .........................13, 14

7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)................................23

## I. INTRODUCTION

After hard-fought litigation and over four months of settlement negotiations, Representative Plaintiffs Marshall Smith, Brandon Herman, Chad Patterson, Jeffery Roberts, Michael Will, Susan Winstead, Robert Bohannon, Holly Buckingham, Richard Morello, Jr., Robert Harris, Amanda Lariscy, Charles Newman, and Paul Christiansen ("Representative Plaintiffs"), reached a class action settlement agreement with defendant ComplyRight, Inc. ("ComplyRight").

The Settlement provides for the payment of $3,025,000 by ComplyRight for the benefit of the Settlement Class. Under the Settlement, Settlement Class Members are eligible to claim their choice of a 2-year subscription to the identity theft protection product MyIDCare at no cost to them, a one-time cash payment (preliminarily estimated to be between $50 and $65), or reimbursement of up to $200 for documented lost time or certain expenses incurred as a result of the Data Breach. The Settlement also mandates that ComplyRight undertake commitments to data security and training going forward, including regularly conducting inspections of the security of its systems and encrypting Social Security numbers residing in storage. On May 24, 2019, after briefing, a hearing, and due consideration, the Court granted preliminary approval of the Settlement and ordered that notice be provided to the Settlement Class in accordance with the Notice Program. See Order Granting Preliminary Approval of Class Action Settlement Agreement, ECF No. 88 ("Preliminary Approval Order").

The Court-approved Notice Program has been extremely effective. The Settlement Administrator, KCC, reports that Postcard Notice or Email Notice was successfully sent directly to more than 90 percent of all Settlement Class Members.

Settlement Class Members' reaction to the Settlement has been overwhelmingly positive. The deadline to submit a claim form is December 6, 2019. As of September 27, 2019, KCC reported that 23,588 claim forms have already been submitted. No objections to the Settlement were filed and only seven individuals requested to be excluded from the Settlement Class.

As shown herein, an analysis of the factors outlined by Rule 23(e) of the Federal Rules of Civil Procedure demonstrates that the Settlement is fair, reasonable, and adequate. Respectfully, the Court should grant final approval of the Settlement.

## II.  BACKGROUND

### A.  Nature of the Litigation

On July 13, 2018, ComplyRight sent letters to Plaintiffs and approximately 665,496 others informing them that from at least April 20, 2018 to May 22, 2018, an unauthorized person or persons illegally intruded into its website, www.efile4biz.com, and accessed or viewed their name, address, telephone number, email address, and Social Security number (the "Data Breach").[1] Settlement Class Members' personal information had been entered into ComplyRight's website by, or on behalf of, employers or payers to prepare tax-related forms, for example IRS forms 1099 and W-2. ComplyRight's letters offered Settlement Class Members a free one-year subscription to a TransUnion credit monitoring and identity theft protection product.

Following the announcement of the Data Breach, five class action complaints were filed in federal district courts in Illinois, Florida, Nevada, and Wisconsin asserting claims against

---

[1] A third-party forensics investigator retained by ComplyRight identified 662,477 individuals in the United States and an additional 510 individuals in U.S. territories or the armed forces as having been impacted by the Data Breach. These figures did not include certain incomplete records compromised as a result of the Data Breach. Employing address verification and correction services, a third party retained by ComplyRight was able to correct or complete certain incomplete or inadequate records, increasing the size of the Settlement Class to 665,498 individuals.

ComplyRight.[2] Co-Lead Settlement Class Counsel reached out to plaintiffs' counsel in each case and, after several discussions, was able to secure an agreement to informally consolidate the actions before this Court.

On September 10, 2018, Representative Plaintiffs filed the Consolidated Amended Class Action Complaint ("CAC") against ComplyRight. ECF No. 27. On October 24, 2018, ComplyRight moved to dismiss the CAC, moved to strike Representative Plaintiffs' class allegations, and filed its Answer and Affirmative Defenses. ECF Nos. 38, 41, 43. On November 14, 2018, Representative Plaintiffs moved to strike certain of ComplyRight's affirmative defenses and, on November 26, 2018, filed their oppositions to ComplyRight's motion to dismiss the CAC and to strike their class allegations. ECF Nos. 59, 60. After discussions between Settling Parties, ComplyRight filed an Amended Answer and Affirmative Defenses on December 10, 2018, reducing the number of affirmative defenses asserted from forty-one (41) to ten (10). ECF No. 65. Pursuant to the Northern District of Illinois' Mandatory Initial Discovery Pilot Program and schedule set by the Court, the Parties exchanged disclosures, written discovery, and documents.

The Settling Parties engaged in several rounds of settlement negotiations prior to reaching the Settlement. The Parties participated in mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS on December 11, 2018, and again on January 31, 2019. In the months following the second mediation, the Parties continued to negotiate with the assistance of Judge Andersen (Ret.). After over four months of negotiations, the Parties executed a Memorandum of Understanding on April 15, 2019. The Settlement Agreement was executed on May 22, 2019.

---

[2] *See Winstead v. ComplyRight, Inc.*, Case No. 1:18-cv-04990 (N.D. Ill.); *Bohannon v. ComplyRight, Inc.*, Case No. 0:18-cv-61730-BB (S.D. Fla.); *Roberts v. ComplyRight, Inc.*, Case No. 0:18-cv-61836-CMA (S.D. Fla.); *Morello v. ComplyRight, Inc.*, Case No. 2:18-cv-01480-RFB-GWF (D. Nev.); and *Newman v. ComplyRight, Inc.*, Case No. 2:18-cv-01258-NJ (E.D. Wis.).

### B.    Summary of the Settlement

#### 1.    The Settlement Class

In granting preliminary approval of the Settlement, the Court concluded that the following Settlement Class was likely to be certified for settlement purposes only at the Final Fairness Hearing:

> All persons whose Personal Information was maintained on ComplyRight's website during the Data Breach that occurred from at least April 20, 2018 through May 22, 2018, including all persons who were sent the July 13, 2018 letter informing them of the Data Breach.

Preliminary Approval Order at 2; *see also* SA ¶¶ 1.11, 2.14.[3] The following Persons are specifically excluded from the Settlement Class: (a) individuals who are or were during the Data Breach officers or directors of ComplyRight; (b) any person found to be criminally involved in the Data Breach; and (c) any judge presiding over this matter. SA ¶ 1.11.

#### 2.    Settlement Benefits

The Settlement includes the following benefit provisions:

#### a.    Settlement Fund

The Settlement provides that ComplyRight shall pay $3,025,000 into the Escrow Account (the "Settlement Fund"). The Settlement Fund will be used to pay valid claims submitted by Settlement Class Members selecting the Cash Option or the Reimbursement Option, the costs of notice and claims administration (not to exceed $300,000), and Court-approved attorneys' fees, costs, expenses, and Representative Plaintiff service awards. Under the Settlement, ComplyRight is also responsible for paying the costs of the Protection Plan Option, which will not be paid from

---

[3] References to particular paragraphs of the Settlement are prefixed by "SA ¶."

the Settlement Fund. SA ¶¶ 2.1, 2.8. No portion of the Settlement Fund will revert back to ComplyRight. SA ¶ 2.13.

>    **b.    The Protection Plan, Cash, and Reimbursement Options**

The Settlement enables Settlement Class members to claim and receive, at their selection, one of the following benefits: (a) Protection Plan Option, (b) Cash Option, or (c) Reimbursement Option. SA ¶ 2.3.

*Protection Plan Option*. ComplyRight shall make available free-of-charge to claiming Settlement Class Members a two-year subscription to MyIDCare® to be provided by ID Experts Corp. to include (i) credit monitoring by Experian (or such other qualified company approved by Proposed Co-Lead Settlement Class Counsel; (ii) dark web monitoring; (iii) Fully Managed Recovery (full services); (iv) $1,000,000 insurance coverage for reimbursement of losses attributable to the Data Breach, which shall commence upon enrollment; (v) Member Advisory Services; (vi) Lost Wallet Assistance; and (vii) 24-Hour Customer Service for each of the above, as applicable. SA ¶ 2.4(a). Prior to activation, a Settlement Class member may transfer the Protection Plan to their spouse, significant other with whom they cohabitate, or child age twenty-five (25) or younger. SA ¶¶ 1.15, 2.4(b).

As of September 27, 2019, KCC reported that 2,061 claims have been filed by Settlement Class Members requesting the Protection Plan Option. The retail value of these benefits is approximately $492,166, and the value of the Protection Plan Option will continue to increase as more claims are submitted prior to the December 6, 2019 claims deadline.[4] ComplyRight is

---

[4] This estimate is calculated as follows: $9.95 (approximate cost per month) * 24 (number of months in two years) * 2,061 (claims submitted) = $492,166.80. *See* Declaration of Erich P. Schork (May 29, 2019) (ECF 89) (including a screenshot from the MyIDCare website illustrating the $9.95/month retail price of the product most similar to the Protection Plan Option).

responsible for paying all costs of the Protection Plan Option and such costs shall not be paid from the Settlement Fund.

*Cash Option*. Settlement Class members claiming the Cash Option will be entitled to a cash payment. The amount of each cash payment is dependent on the value of valid claims submitted under the Cash Option and Reimbursement Option. After payment of the costs of Notice and Settlement Administration (not to exceed $300,000), and Court-awarded attorneys' fees, costs, expenses, and Representative Plaintiff Service Awards ("Administrative Expenses"), in the event that the total amount remaining in the Settlement Fund exceeds the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the Cash Option and Reimbursement Option shall be increased pro rata to exhaust the Fund. SA ¶ 2.10. In the event the total amount in the Settlement Fund after payment of Administrative Expenses is less than the aggregate value of valid Cash Option and Reimbursement Option claims submitted, payments for the cash option and reimbursement option shall be decreased pro rata to exhaust the fund. SA ¶ 2.11.

As of September 27, 2019, KCC reported that 21,400 claims have been filed by Settlement Class Members requesting the Cash Option. Based on the number of claims submitted to date, Co-Lead Settlement Class Counsel preliminarily estimate that Cash Option payments will be between $50 and $65. This estimate is calculated by projecting the submission of 29,905 valid Cash Option and 175 valid Reimbursement Option claims with an average value of $100.[5] The formula is as

---

[5] As the passage of time following notice has grown longer, the number of claims received per day has dropped gradually, as is common in class actions. Between August 21, 2019, and September 12, 2019, KCC reported that 3,681 claims were submitted (approximately 167 per day). Between September 12, 2019 and September 27, 2019, KCC reported that 2,324 claims were submitted (approximately 155 per day). The estimate conservatively assumes that 135 claims will be submitted per day between September 28, 2019 and December 6, 2019, and that the ratio of Cash

follows: $3,025,000 - $908,333 (fees) - $23,723 (costs) - $32,500 (service awards) - $300,000 (notice and administration) - $17,500 (reimbursement option) / 29,905 = $58.28. The estimate is consistent with the $50 estimate included in the notice documents.

*Reimbursement Option*. Settlement Class Members providing the requisite documentation shall be entitled to receive up to $200 as reimbursement of the following categories of expenses incurred as a result of the Data Breach and not reimbursed by insurance or another third party: (1) documented time spent as a result of the Data Breach of up to 3 hours at $15/hour; (2) money spent purchasing police reports because of the Data Breach; (3) late charges or other fees paid because of the Data Breach, including overdraft fees; and (4) other similar expenses directly related to the Data Breach and expended in good faith, at the Settlement Administrator's discretion. SA ¶ 2.6(b). As set forth above, the value of payments made under the Reimbursement Option is dependent on the aggregate value of valid claims submitted under the Cash Option and Reimbursement Option, and may be increased or decreased pro rata in the same manner as the Cash Option described above. SA ¶¶ 2.10, 2.11.

As of September 27, 2019, KCC reports that 127 claims have been filed by Settlement Class Members requesting the Reimbursement Option.[6]

### c. Security Measures

The Settlement provides that ComplyRight shall implement and maintain the following data security practices for a period of three (3) years following the Effective Date of the Settlement:

- An information security program containing policies, procedures, and technical controls;

---

Option, Reimbursement Option, and Protection Plan Option claims remains constant (.90/.095/.005).

[6] KCC has not yet reviewed these claims and the documentation submitted along therewith to confirm their validity.

- Controls regarding authentication of users who access ComplyRight's website and controls designed to prevent access by users in locations where illegitimate use of the ComplyRight website could originate;

- ComplyRight shall encrypt all Social Security numbers stored electronically;

- Regular and periodic training and education regarding the storage, handling, and destruction of personally identifiable information and nonpublic personal information for employees that handle those types of information; and

- Annual simulated penetration testing and procedures designed to monitor and address vulnerabilities to ComplyRight's information systems.

SA ¶ 2.15. These prospective security measures are important benefits that will benefit Settlement Class Members who still have their data stored with ComplyRight due to ongoing employment relationships with its clients.

### d. The Costs of Notice and Settlement Administration

Under the Settlement, the costs of Notice and Settlement Administration (not to exceed $300,000) shall be paid from the Settlement Fund. On account of the substantial number of claims submitted to date, KCC estimates that $300,000 in Notice and Settlement Administration will be paid from the Settlement Fund.

### e. Attorneys' Fees, Costs, and Expenses, and Representative Plaintiff Service Awards

Pursuant to the Settlement and subject to Court approval, ComplyRight agreed not to oppose Representative Plaintiffs' request for an attorneys' fee award of $908,333, reimbursement of reasonable out-of-pocket costs and expenses, and payment of service awards to each Representative Plaintiff in the amount of $2,500. These amounts shall be paid from the Settlement Fund. Aside from the fact that the Settlement would include a common fund, Settling Parties did not discuss attorneys' fees, costs, and expenses or Representative Plaintiff service awards until after all substantive elements of the Settlement were agreed upon. SA ¶ 7.1. The amounts of any award of attorneys' fees, costs, and expenses and Representative Plaintiff service awards are

8

intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6.

On August 26, 2019, Representative Plaintiffs filed their Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Payment of Representative Plaintiff Service Awards ("Fee Motion"). ECF 91. KCC uploaded Representative Plaintiffs' Fee Motion to the Settlement website the next day. No objections to the Fee Motion were received.

### C.    Confirmatory Discovery

Pursuant to the Settlement, Co-Lead Settlement Class Counsel were entitled to confirmatory discovery to confirm their assessment of the Settlement as fair, reasonable, and adequate. SA ¶ 10.4. During the course of settlement discussions and the confirmatory discovery process, ComplyRight produced documents detailing a third-party's forensic investigation of the Data Breach, external security assessments of its efile4biz.com web application conducted prior to and after the Data Breach, and server logs, network logs, firewall logs and other important documents relating to the Data Breach.

On September 4, 2019, Co-Lead Settlement Class Counsel deposed James W. Fallin, Development Manager for efile4biz.com. Mr. Fallin provided testimony regarding: (1) the measures taken by ComplyRight to secure its network prior to the Data Breach; (2) what prompted ComplyRight's discovery of the Data Breach; (3) ComplyRight's conclusions regarding the cause of the Data Breach and the sophistication of the hacker; (4) ComplyRight's actions in the immediate aftermath of learning of the Data Breach, including actions to ensure the intruder could no longer access private and confidential information; (5) the specifics of ComplyRight's investigation into the Data Breach, including how it determined the scope of the Data Breach and what information was accessed by the unauthorized individual; and (6) ComplyRight's security

9

policies after the Data Breach. Co-Lead Settlement Class Counsel also interviewed a third-party forensics expert retained by ComplyRight regarding the investigation into the cause and scope of the Data Breach. The confirmatory discovery process reinforced Co-Lead Settlement Class Counsels' view that the Settlement is fair, reasonable, and adequate.

**D.    The Court-Approved Notice Plan Was Substantial and Effective**

Where a class has been certified under Fed. R. Civ. P. 23(b)(3), "the [C]ourt must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Notice serves to "afford members of the class due process which, in the context of the Rule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp*., 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974)). "[D]ue process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice." *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010).

Here, the Court-approved Notice Program was extremely effective. The Notice Program was implemented by KCC, an experienced class action notice provider. As explained in detail in the Declaration of Jeremy Neville ("Neville Declaration"), attached hereto as Exhibit A, Notice was provided in accordance with the Court-approved Notice Program. Pursuant to the Notice Program, direct notice was sent via email or postcard, a settlement website was established, and a toll-free number was set up. Postcard or email notices were successfully sent to more than 90 percent of all Settlement Class Members. Such notice readily satisfied the "best practicable"

standard.[7] *see also* Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010) (recognizing 70% reach to be reasonable).

KCC caused 581,981 Postcard Notices to be mailed to Settlement Class Members via U.S. Mail. Neville Decl. ¶ 10. Prior to mailing the Postcard Notices, KCC removed records with invalid addresses and duplicate records and updated the remaining records using the National Change of Address database maintained by the United States Postal Service. Neville Decl. ¶ 2. For 70,301 notices returned as undeliverable by the USPS, KCC ran address searches and re-mailed Postcard Notice to 12,990 individuals for whom an alternative address was found. Neville Decl. ¶ 7.

In accordance with the Notice Program, KCC also caused Email Notice to be sent to 82,218 Settlement Class Members for whom ComplyRight had an email address. Neville Decl. ¶ 7. Out of the 82,218 emails sent, only 5,012 were returned as undeliverable. Neville Decl. ¶ 7.

An informational website was established with an easy-to-remember domain name, www.complyrightsettlement.com, that was prominently displayed in the Postcard Notice, Email Notice, Claim Form, and Detailed Notice. The informational website includes a short summary of the Settlement and includes important dates relating to the Settlement (exclusion deadline, objection deadline, claim filing deadline, and final approval hearing date). Through the informational website, Settlement Class Members are able to submit a Claim Form electronically, view and download the Claim Form, Settlement Agreement, Detailed Notice, Order Granting Preliminary Approval, and Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of

---

[7] This figure was calculated as follows: 581,981 (Postcard Notices mailed) – 70,301 (Postcard Notices returned as undeliverable) + 12,990 (Postcard Notices re-mailed to new addresses) + 82,218 (Email Notices sent) – 5,012 (Email Notices returned as undeliverable) / 665,498 (Class size) = .9043.

Costs and Expenses, and Payment of Representative Plaintiff Incentive Awards. As of September 26, 2019, there had been 146,666 visits to the Settlement website. Neville Decl. ¶ 3.

A toll-free number was also established to handle Settlement Class Member inquiries regarding the Settlement and to handle notice requests. Neville Decl. ¶ 4. As of September 26, 2019, a total of 6,905 calls had been received on that line. Neville Decl. ¶ 4. Co-Lead Settlement Class Counsel also responded to dozens of inquiries regarding the Settlement.

The Notice Program, as designed and implemented, constitutes the best notice practicable under the circumstances, complies with Fed. R. Civ. P. 23, and satisfies due process requirements.

## III. ARGUMENT

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Indeed, "[i]t is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement." *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 312–13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) (internal quotations omitted).

A class action settlement may only be approved after a hearing and a finding that the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(1)(C). To determine whether a settlement satisfies the requirements of Rule 23(e), courts consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Analysis of these factors here supports that the Settlement satisfied the required standard of fair, reasonable, and adequate.

### A. Final Approval of the Settlement Is Appropriate

#### 1. The Settlement Class Is Well Represented

Co-Lead Settlement Class Counsel have significant experience litigating data breach class actions and are well-versed with the legal claims at issue and the risks of this case. Since the inception of this litigation, they have worked diligently to advance Representative Plaintiffs' and the other Settlement Class Members' interests. After learning of the five cases filed against ComplyRight in multiple jurisdictions across the country, Co-Lead Settlement Class Counsel reached out to plaintiff's counsel from each case and were able to secure agreement to informally consolidate the related cases before the Court without judicial intervention. They also drafted the Consolidated Class Action Complaint and the Amended Consolidated Class Action Complaint, opposed ComplyRight's motions to dismiss and to strike class allegations, and served and responded to discovery.

Prior to reaching the Settlement, Co-Lead Settlement Class Counsel and counsel for ComplyRight engaged in several rounds of settlement negotiations over the course of four months, including two in-person mediation sessions with Judge Andersen (Ret.). Throughout those negotiations, Co-Lead Settlement Class counsel pursued informal discovery from ComplyRight that was appropriately targeted at information relevant to the Settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.") (citations and quotations omitted); *see also* Manual for Complex Litigation (Fourth) § 13.12 (2004) (recognizing that the benefits of

settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations); *id.* § 11.423 (courts are to "encourage counsel to exchange information, particularly relevant documents, without resort to formal discovery").

Pursuant to the confirmatory discovery process provided for by the Settlement, Co-Lead Settlement Class Counsel requested, received from ComplyRight, and reviewed several important documents relating to the Data Breach and ComplyRight's security measures before and after the Date Breach. Co-Lead Settlement Class Counsel also deposed a Development Manager for efile4biz.com and a computer forensics expert retained by ComplyRight regarding the facts and circumstances surrounding the Data Breach and ComplyRight's response thereto. The process confirmed Co-Lead Settlement Class Counsels' view that the Settlement is fair, reasonable, and adequate.

Representative Plaintiffs likewise worked diligently on behalf of the Settlement Class. They stepped forward to prosecute this action on behalf of all Settlement Class Members, were involved in the drafting of the complaint and responding to discovery, and reviewed and approved the Settlement.

This factor favors approval of the Settlement.

### 2. The Settlement Was Reached as a Result of Hard-Fought, Arm's Length Negotiations

The Settlement is the product of over four months of extensive, hard-fought, arm's length negotiations conducted by experienced counsel. On December 11, 2018, the Settling Parties participated in mediation before the Honorable Wayne R. Andersen (Ret.) of JAMS. After a full day of negotiations, the Settling Parties left that mediation without a deal. In the weeks that followed, Co-Lead Settlement Class Counsel and counsel for ComplyRight remained in contact.

A second mediation before Judge Andersen (Ret.) took place on January 31, 2019. Similar to the first mediation, those negotiations concluded without an agreement between Settling Parties. In the months that followed, the Settling Parties continued to negotiate with the assistance of Judge Andersen (Ret.). That process involved several calls and emails and the exchange of proposals and counter-proposals. After over four months of negotiations, the Settling Parties executed a Memorandum of Understanding on April 15, 2019. The Settlement Agreement was then executed on May 20, 2019.

Throughout the negotiations, Co-Lead Settlement Class Counsel and counsel for ComplyRight fought hard for the interests of their respective clients. This factor supports approval of the Settlement.

### 3. The Settlement Benefits Are Excellent, Taking Consideration the Costs, Risks, and Delay of Trial and Potential Appeals

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced with the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to plaintiffs." *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citation omitted).

Balancing the risks of continued litigation against the immediacy and certainty of the significant recovery provided for by the Settlement supports that the Settlement should be approved.

Representative Plaintiffs and Co-Lead Settlement Class Counsel believe the claims asserted in the litigation have merit. They would not have fought so hard to advance the claims if it were otherwise. But they also recognize the substantial risks involved in continuing this

litigation. ComplyRight has aggressively maintained its position that the CAC fails to state a claim for relief and that Representative Plaintiffs cannot prove liability and damages. While they disagree with ComplyRight's views, Co-Lead Settlement Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the litigation. They also recognize the difficulties in establishing liability on a class-wide basis through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. *See Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *4 (E.D. Pa. Sept. 24, 2019) (recognizing in granting final approval to a settlement that "[t]his is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare").

Prosecuting this litigation through trial and appeal would likely be lengthy, complex, and impose significant costs on all parties. *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (recognizing that "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them"). Continued proceedings necessary to litigate this matter to final judgment would likely include substantial motion practice, extensive fact discovery, class certification proceedings, further dispositive motions and, of course, a trial and appeal. Given the complex nature of the Data Breach, a battle of the experts at trial is almost a certainty and, as such, continued proceedings would likely include costly expert discovery and significant motion practice related to such. Also, considering the size of the Settlement Class and the amount of money at stake, any decision on the merits would likely be appealed, causing further delay.

The Settlement, in contrast, delivers significant relief to the Settlement Class. Under the Settlement, ComplyRight is required to pay $3,025,000 into a Settlement Fund, and all Settlement Class have the opportunity to claim, at their selection, the Protection Plan, a cash payment

(preliminarily estimated to be between $50 to $65), or up to $200 for reimbursement of documented time spent (up to 3 hours at $15/hour) and certain documented out-of-pocket expenses related to the Data Breach. Settlement Class Members needed only log-on to the settlement website and complete a Claim Form to receive a benefit of the Settlement. If they are more comfortable doing so, they also have to option of mailing a Claim Form to KCC.

After Administrative Expenses are paid from the Settlement Fund, all amounts remaining in the Settlement Fund will be paid to Settlement Class Members submitting valid Claim Forms for the Cash and Reimbursement Options. The Settlement also requires ComplyRight to implement and maintain specific security measures.

This factor favors approval of the settlement. *See Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-WQH BGS, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014) ("The court shall consider the vagaries of the litigation and compare the significance of immediate recovery by way of compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush") (citations and quotations omitted); *see also Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re Sunrise Sec. Litig.,* 131 F.R.D. 450, 455 (E.D. Pa. 1990) (approving a class action settlement because, in part, the settlement "will alleviate . . . the extraordinary complexity, expense and likely duration of this litigation").

### 4. The Method of Distributing Relief Supports Final Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The Notice Program and Claim Form were designed to encourage the filing of valid claims by Settlement Class Members. To claim the Protection Plan or Cash Option, Settlement Class Members need only select their desired option, provide contact information, and submit a Claim Form (online or through mailing). To claim relief under the Reimbursement Option, Settlement Class Members need only select that form of relief, provide contact information, submit documentation supporting the claimed unreimbursed time or expenses, and submit their Claim Form (online or through mailing). All Claim Forms submitted are being processed by KCC, an experienced and nationally recognized class action administration firm. To facilitate timely and efficient payment to those Settlement Class members selecting the Cash or Reimbursement Options, Settlement Class Members are also given the option to receive payment electronically (via PayPal or Zelle) or have a check mailed to them.

The methods of distributing relief to Settlement Class Members further support that the Settlement is fair, reasonable, and adequate.

### 5. The Terms of the Proposed Award of Attorneys' Fees Supports Final Approval of the Settlement

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment."

The terms of the proposed attorney's fee award under the Settlement is consistent with class action best practices. The Settling Parties did not discuss attorneys' fees until after all substantive elements of the Settlement were agreed upon. SA ¶ 7.1. The amount of any attorney's fee award is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. SA ¶ 7.6. Additionally, the attorneys' fees award shall be paid from the Settlement Fund within fourteen (14) days of the Effective Date of the Settlement—there is no quick-pay provision in the Settlement. SA ¶ 7.5.

Representative Plaintiffs' Fee Motion requests an attorneys' fee award of $908,333, reimbursement of costs and expenses in the amount of $23,723.85, and payment of a service award to each Representative Plaintiff in the amount of $2,500. Not taking into account the value of the Protection Plan or the enhanced security measures provided for by the Settlement, the requested fee award equates to approximately 33.3 percent of the recovery achieved.[8] The requested fee award is reasonable under the percentage-of-recovery method, which is the favored method for calculating attorneys' fees in common fund cases, such as this matter. *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (noting that several courts in this circuit have awarded "fees at or about the 33.3%-of-fund level").

In accordance with Fed. R. Civ. P. 23(h), Plaintiffs' Fee Motion was filed on August 26, 2019, and posted on the Settlement website the next day. The deadline to object to the Settlement was September 16, 2019. No objection to the Settlement or Representative Plaintiffs' Fee Motion was submitted. The terms of the proposed attorney's fee award support final approval of the Settlement.

### 6. The Settling Parties' Agreements

Rule 23(e)(3) provides that "parties seeking approval must file a statement identifying any agreement made in connection with the proposal." After over four months of negotiations, the Settling Parties executed a Memorandum of Understanding on April 15, 2019. The substantive terms of the Memorandum of Understanding are reflected in the Settlement, which was executed by the Settling Parties on May 20, 2019.

---

[8] ($3,025,000 - $300,000 (notice and settlement administration costs))/3=$908,333.

### 7. The Settlement Treats Settlement Class Members Equitably

Under the Settlement, all Settlement Class Members are eligible to claim the Protection Plan, Cash Option, or Reimbursement Option. As the foregoing analysis demonstrates, the Settlement is fair, reasonable, and adequate, and should be granting final approval.

### B. The Settlement Class Should Be Certified for Settlement Purposes

"The ultimate decision to certify the class for purposes of settlement cannot be made until the hearing on final approval of the proposed settlement." Fed. R. Civ. P. 23 advisory committee notes to 2018 amendments. As explained below, the requirements of Rule 23(a) and 23(b)(3) are satisfied, and the Settlement Class should be certified for settlement purposes only.

### 1. The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied

Rule 23(a) sets forth the following prerequisites for certifying a class: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are satisfied here.

### a. The Settlement Class Is So Numerous that Joinder of Individual Members Is Impracticable

Fed. R. Civ. P. 23(a)(1) requires a showing that "the class is so numerous that individual joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No "magic number" is necessary. *See Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969). Courts in this circuit have certified classes with less than 50 members. *Patrykus v. Gomilla*, 121 F.R.D. 357, 361 (N.D. Ill. 1988). Here, the Settlement Class includes approximately 665,498 individuals. Numerosity is satisfied.

20

**b.** **There Are Questions of Law and Fact Common to the Settlement Class**

Rule 23(a)(2) requires the existence of a question of law or fact that is common to all Settlement Class Members and capable of class-wide resolution, the determination of which is central to the validity of all class members' claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (collecting authorities).

Several questions of law and fact common to all Settlement Class Members exist, including: (i) whether ComplyRight violated common law duties, prohibitions on unfair and deceptive trade practices, other legal obligations, and industry standard practices in causing the Data Breach; (ii) whether ComplyRight failed to properly secure and protect Settlement Class Members' Personal Information, and (iii) whether Settlement Class Members are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. These legal and factual questions are common to each member of the Settlement Class. The commonality requirement is satisfied.

**c.** **Representative Plaintiffs' Claims Are Typical of the Claims of the Settlement Class**

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Whether a plaintiff's claims are typical of those of the other class members is closely related to the commonality inquiry. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.* Typicality does not require claims to be

"identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Representative Plaintiffs and all other Settlement Class Members' claims arise from ComplyRight's alleged failure to implement and maintain reasonable security measures and the resulting Data Breach, and their claims are based on the same legal theories. As a result, Rule 23(a)(3)'s typicality requirement is satisfied.

### d. The Interests of Representative Plaintiffs and Co-Lead Settlement Class Counsel Are Aligned with the Interests of the Settlement Class

Representative parties must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy requires that class representatives retain adequate counsel and have no conflicting interests with other class members. *In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009); *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (requiring "competent and experienced counsel able to conduct the litigation"). When class representatives and members seek the common goal of the largest possible recovery for the class, their interests do not conflict. *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981); *see also Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery.").

Representative Plaintiffs have demonstrated that they are well-suited to represent the Settlement Class. They each came forward prior to the filing of the initial complaints and have been actively involved in this matter since that time, including participating in the Mandatory Initial Discovery Pilot Program and responding to their discovery obligations. Their interests are aligned with those of the other Settlement Class Members. Additionally, Co-Lead Settlement Class Counsel are well-qualified to represent the Settlement Class, as they each possess significant

experience leading the prosecution of complex class action matters, including cases involving data breaches. The adequacy requirement is satisfied.

### 2.    The Requirements of Rule 23(b)(3) Are Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements were added "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) advisory committee notes to 1966 Amendment).

Both of these requirements are satisfied here.

### a.    Questions Common to All Settlement Class Members Predominate Over Any Potential Individual Questions

Rule 23(b)(3)'s predominance element requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The requirement "is satisfied when 'common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication.'" *Messner v. Northshore University Healthsystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting 7AA Wright & Miller, Federal Practice & Procedure § 1778 (3d ed. 2011)). Common questions predominate when adjudicating questions of liability common to the class will achieve economies of time and expense. *Chi. Teachers Union v. Bd. of Educ. of Chi.*, No. 14-2843, 2015 WL 4667904, at *14 (7th Cir. Aug. 7, 2015). Predominance is not determined by "counting noses"—determining whether more common issues or individual issues exist regardless of importance. *Butler v. Sears Roebuck*

*& Co.*, 727 F.3d 796, 801 (7th Cir. 2013). "An issue 'central to the validity to each one of the claims' in a class action, if it can be resolved 'in one stroke,' can justify class treatment." *Id.* (quoting *Dukes*, 131 S. Ct. at 2551). "Where 'defendants' liability predominates over any individual issues involving plaintiffs, and the Settlement Agreement will insure that funds are available' to compensate plaintiffs, predominance is satisfied." *In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891, 921 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) (quoting *In re Chinese–Manufactured Drywall Prods. Liab. Litig.,* MDL No. 2047, 2012 WL 92498, at *11 (E.D. La. Jan. 10, 2012)).

Representative Plaintiffs assert claims for negligence, negligence per se, negligent misrepresentation, and violations of state statutes prohibiting unfair and deceptive trade practices, regulating the use of Social Security numbers, and requiring reasonable procedures to safeguard sensitive personal information stored electronically and timely notification of data breaches to affected residents. The key questions in this litigation are whether Defendants failed to take reasonable and adequate measures to prevent the Data Breach, detect the Data Breach once initiated, remedy and mitigate the effects of the Data Breach, and to timely notify affected persons of the Data Breach in its aftermath. The predominance requirement is satisfied.

> **b.    A Class Action Is the Superior Method to Fairly and Efficiently Adjudicate the Matter**

Rule 23(b)(3) requires a class action to be "superior to other available methods for the fair and efficient adjudication of the controversy," and sets forth the following factors:

> The matters pertinent to the findings include: (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all. *Carnegie v. Household Int'l Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Where, as here, a court is deciding the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes do not have to be considered. *See Amchem*, 521 U.S. at 619.

A class action is the only reasonable method to fairly and efficiently adjudicate Settlement Class Members' claims against ComplyRight. *See, e.g.*, *Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"). Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims on their own against ComplyRight given the comparatively small size of each individual Settlement Class Member's claims. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) (stating that the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action"). The superiority requirement is satisfied.

## VI.     CONCLUSION

As the foregoing demonstrates, the Settlement is fair, reasonable, and adequate, and satisfies the standard for final approval. Therefore, Representative Plaintiffs, individually and on behalf of the Settlement Class, by and through Co-Lead Settlement Class Counsel, respectfully pray that this Honorable Court enter an Order:

(1)     Finding that the Settlement is fair, reasonable, and adequate, and granting final approval to the Settlement;

(2)     Certifying the Settlement Class for settlement purposes only; and

(3)     Granting such other relief as the Court deems just and appropriate.


Dated:  September 30, 2019                    Respectfully submitted,

                                              /s/ Erich P. Schork

                                              Ben Barnow
                                              Erich P. Schork
                                              BARNOW AND ASSOCIATES, P.C.
                                              205 W. Randolph St., Ste. 1630
                                              Chicago, IL 60606
                                              Tel: (312) 621-2000
                                              Fax: (312)-641-5504
                                              b.barnow@barnowlaw.com
                                              e.schork@barnowlaw.com

                                              Laurence D. King
                                              Matthew B. George
                                              KAPLAN FOX & KILSHEIMER LLP
                                              350 Sansome Street, Suite 400
                                              San Francisco, CA 94104
                                              Telephone: (415) 772-4700
                                              Facsimile: (415) 772-4707
                                              lking@kaplanfox.com
                                              mgeorge@kaplanfox.com

                                              *Co-Lead Settlement Class Counsel*

Shpetim Ademi
ADEMI & O'REILLY, LLP
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com

Jeremiah Frei-Pearson
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
jfrei-pearson@fbfglaw.com

Benjamin F. Johns
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 W. Lancaster Avenue
Haverford, PA 19041
Telephone: 610-642-8500
bfj@chimicles.com
mbd@chimicles.com

Aron D. Robinson
LAW OFFICES OF ARON D. ROBINSON
180 W. Washington, Suite 700
Chicago, IL 60602
Tel: (312) 857-9050
Fax: (312) 857-9054
adroblaw@aol.com

*Plaintiffs' Executive Committee*

Matt Harman
HARMAN LAW FIRM
3414 Peachtree Road NE Suite 1250
Atlanta, GA 30326
Tel: (404) 554-0777
mharman@harmanlaw.com

David C. O'Mara
THE O'MARA LAW FIRM
311 East Liberty Street
Reno, NV 89501
david@omaralaw.net

Marc A. Wites
WITES LAW FIRM
4400 North Federal Highway
Lighthouse Point, FL 33064
Telephone: (954) 933-4400
mwites@witeslaw.com

Jeffrey R. Krinsk
FINKELSTEIN & KRINSK LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333
jrk@classactionlaw.com

*Other Plaintiffs' Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2019, the foregoing document was filed with the Court's CM/ECF system, which will provide notice of electronic filing to all counsel of record.

/s/ Erich P. Schork_____